892 So.2d 111 (2004)
STATE of Louisiana
v.
Vernon SIMMS.
No. 03-KA-1459.
Court of Appeal of Louisiana, Fifth Circuit.
December 28, 2004.
*113 Holli Herrle-Castillo, Louisiana Appellate, Marrero, LA, for Defendant/Appellant, Vernon Sims.
John M. Crum, Jr., District Attorney, Rodney A. Brignac, Assistant District Attorney, LaPlace, LA, for Plaintiff/Appellee, the State of Louisiana.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SUSAN M. CHEHARDY, and CLARENCE E. McMANUS.
SUSAN M. CHEHARDY, Judge.
Vernon Simms appeals his conviction of driving while intoxicated, third offense. He challenges the trial court's denial of his motion for mistrial and also challenges the sufficiency of the evidence. We affirm the conviction, but vacate the sentence and remand for resentencing.
On August 9, 2001 the District Attorney for St. John the Baptist Parish filed a bill of information charging Vernon Simms with violation of La.R.S. 14:98, driving while intoxicated (DWI), after having been previously convicted of DWI in St. Tammany Parish on June 12, 2001 and in West Baton Rouge Parish on June 27, 1996. The defendant pleaded not guilty at arraignment. On February 19, 2003, he went to trial before a six-person jury. During voir dire, the defendant moved for a mistrial based on a remark made by the trial judge, but the court denied the motion. *114 The jury found the defendant guilty as charged.
On June 24, 2003, the trial court sentenced the defendant to three years of imprisonment at hard labor and a fine of $2,000. The court suspended all but thirty days of the sentence, which the defendant was to serve on weekends in parish prison without benefit of probation, parole or suspension of sentence, to be completed within the next six months. The court ordered the defendant to undergo evaluation and requested that the evaluator recommend appropriate treatment. The trial judge announced she would order additional outpatient substance abuse treatment, if recommended.
Initially, the court stated that the defendant was to be placed on home incarceration, to be supervised by a probation officer, for the remainder of the sentence after successful completion of the substance abuse treatment. However, the court later stated that home incarceration would begin immediately because defendant's substance abuse treatment was not inpatient.
The trial judge also ordered that the fine and costs be paid within six months, as a condition of probation, or else the defendant's car would be seized and sold to meet these obligations. Subsequently, the trial judge remarked, "Everything has got to be done by December 3rd," which was five months from the date of sentencing.
On appeal, the defendant challenges the trial court's denial of his mistrial motion and the sufficiency of the evidence.[1]

FACTS
The State presented the testimony of a witness to the events, Javier Casiano, as well as the testimony of the arresting officer, Trooper George Castanoda.
Javier Casiano testified that at approximately 10:30 p.m. on May 12, 2001, he was traveling westbound on I-10 near the St. Charles Parish line, when he noticed a van in front of him swerving from left to right. The van veered into the left lane, struck the guard rail, swerved across the right lane, and struck the right guardrail. Casiano called 911 and drove in the middle of the road behind the van to keep other cars away from the van. The van continued swerving until it struck the guardrail again and the tire went flat.
The van pulled over and a man exited the driver's side. Casiano identified the defendant in open court as that man. Casiano said he approached the defendant, asked him to get back into his van, and told him that a wrecker was on its way. According to Casiano, he did not want the defendant hanging around in traffic because he appeared to be intoxicated. Casiano said he smelled a strong odor of alcohol emanating from the defendant; in addition, he observed that the defendant was stumbling, was slurring his speech, and appeared to have urinated on himself.
As the defendant removed a jack from the van, Casiano noticed several beer cans fall out of the vehicle. The defendant attempted to change the tire without success.
On cross examination Casiano stated he assumed the defendant had urinated on himself because he had a wet spot on his clothes all in front, from his waist down to *115 his knees. Casiano admitted, however, that the defendant could have spilled something on himself. Casiano also said he saw the right front tire on the van blow out after the defendant hit the guardrail on the right, which is when the defendant pulled his vehicle over to the shoulder.
Trooper George Castanoda of the Louisiana State Police testified that on the night in question he was dispatched to Mile Post 211.5 in St. John the Baptist Parish. Castanoda spoke to Casiano upon arrival and then approached the defendant, who was still attempting to change the tire. The trooper asked the defendant to walk toward him. As the defendant complied, Castanoda noted that he was stumbling and holding the rail as he walked. When Castanoda asked the defendant whether he was injured, the defendant replied that he was not, but that he had a flat tire while driving.
According to Trooper Castanoda, the defendant's speech was so slurred that he could barely understand him. Further, Castanoda detected a strong odor of alcohol on the defendant's person. When Castanoda asked the defendant whether he had been drinking, the defendant said yes.
After requesting the defendant's permission to conduct a standardized field sobriety test, the trooper performed the horizontal gaze nystagmus test, which detects involuntary jerking of the eye due to an excessive amount of alcohol in the body. According to Trooper Castanoda, the defendant failed three parts of the four-part test. The defendant refused to submit to any additional field sobriety testing. At the correctional center, the defendant refused to sign the Intoxilyzer rights form or to take the Intoxilyzer test.
Castanoda said the defendant never indicated that he was either diabetic or on medication. Castanoda admitted that his training included mention that diabetes can cause a person's speech to slur. He did not inquire whether the defendant was diabetic. Castanoda also admitted that, when preparing a vehicle storage record for the defendant's van, he omitted any mention of empty beer cans in the inventory of the contents of the van. However, he said he did not see any beer cans fall out of the van and, if he saw some cans lying in the road, he would not include them in the inventory.
The defendant took the stand. He testified that on the night in question, he left his home in New Orleans at approximately 9:00 p.m. to visit his daughter, who lives in Baton Rouge. He admitted that he had one beer during the course of the day, and another that evening before he left. He also admitted that he stopped at the store on the way to the Interstate, bought a beer and drank it before getting on the Interstate. He admitted that he is diabetic and takes medication for the diabetes, as well as medication for high blood pressure. He could not recall whether he took his medication on the day of the incident, nor whether he had eaten that day.
According to the defendant, as he was en route to Baton Rouge the tire blew out and he lost control of the van. Before he could regain control, the van swerved and struck the railing. The defendant said he stopped and looked at the tire, but resumed driving in an attempt to find a safer area to change the tire. Once he reached the part of the Interstate that expands into three lanes, he stopped and attempted to change the tire.
According to the defendant, a car pulled up behind him, but the person driving it never exited the car. After the defendant signaled to the driver of the car that everything was fine, the State Police arrived.
The defendant explained that he held onto the railing when walking toward the *116 officer because the van was so close to the curb. He said his speech may have been slurred when he spoke to the officer, but he was not aware of it. Further, the defendant testified he told the officer that he had "a drink." The defendant acknowledged that he had urinated in his pants, but said it happened at the jail, when the officers refused to allow him to use the restroom.
The defendant admitted that he had been convicted of DWI in St. Tammany Parish and in West Baton Rouge Parish. Finally, the defendant also admitted he had been convicted of forcible rape, aggravated crime against nature, and simple robbery in 1991, all of which arose out of the same event, and that he had served 10 years on those convictions.
The State introduced certified copies of defendant's prior DWI convictions. Lieutenant Harry Troxlair of the St. John the Baptist Parish Sheriff's Office, an expert on the field of fingerprint analysis, testified that defendant's fingerprints matched the prints from the St. Tammany Parish conviction.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assignment, the defendant asserts the trial court erred in failing to grant a motion for mistrial. He contends the trial court erred by denying his request for a mistrial, which was based on the ground that during voir dire, the trial judge made an indirect reference to the defendant's right to remain silent.
The comments at issue followed the trial judge's explanation of the presumption of innocence and reasonable doubt and during the judge's explanation of the defendant's right not to testify. When the judge inquired whether any of the jurors would hold the defendant's right not to testify against him, the following exchange took place between prospective juror Champagne and the court:
MR. CHAMPAGNE:
Why shouldn't he testify, confess?
THE COURT:
Pardon?
MR. CHAMPAGNE:
Why shouldn't he confess, answer the question 
THE COURT:
The defendant does not have to take the stand.
MR. CHAMPAGNE:
Right.
THE COURT:
That's our law. It's the State's burden to prove the case against the defendant. The defendant doesn't have to do anything. And that's what I have to stress. The defendant is here but he does not have to take the stand, he does not have to call a witness, he does not have to present one piece of evidence, the burden is on the State. So, with that being the law, are you going to hold it against the defendant if he doesn't do anything like I said he doesn't have to do? Will you hold that against him?
MR. CHAMPAGNE:
No.
THE COURT:
Anyone? I mean, be, be honest.
Mr. Weber.
MR. WEBER:
I would like to hear from him.
THE COURT:
Well, I understand that, that's a very natural desire, that's a very natural desire to want to hear from him. I mean, I want to hear from them too all the time but 
MR. LILLIAN [defense attorney]:
Your Honor, objection.

*117 THE COURT:
 the law is that you cannot force the defendant to present a case. The burden is with the State, he doesn't have to do anything. So if you're chosen as a juror 
MR. WEBER:
No, I don't believe I would be a good juror.
THE COURT:
Then you're going to hold it against the defendant if he doesn't testify?
MR. WEBER:
I would hold it against him if he doesn't testify.
THE COURT:
Okay, anybody else feels that way?
MR. CHAMPAGNE:
I feel that way.
THE COURT:
Mr. Champagne. You're going to hold it against him if he doesn't 
MR. CHAMPAGNE:
I feel that way 
THE COURT:
 present any evidence?
MR. CHAMPAGNE:
 that he should testify.
THE COURT:
Anybody else?
MR. JOHNSON:
I feel the same.
THE COURT:
Wait a minute, let's do this group first.
MR. JOHNSON:
I feel the same thing. Should have the 
THE COURT:
I can't hear you.
MR. JOHNSON:
Should have to decide our opinion too 
THE COURT:
Okay. Look, you all just told me before, I told you all what the law is, you all told me that you all were going to be the judges of the fact, I'm going to be the judge of the law, you find the facts, I tell you what the law is, and you have to follow the law. You all all [sic] told me already you all will follow the law that I give you. Now you're telling me you can't do it.
Is that correct, sir?
MR. JOHNSON:
Not really 
THE COURT:
No, no, it can't be a not really, it's got to be a yes or a no.
MR. JOHNSON:
Well, yeah.
THE COURT:
Yes what?
MR. JOHNSON:
Should be able to testify.
THE COURT:
He is able to, he can if he wants to take the stand or if his lawyer decides it's in his best interest.
MR. JOHNSON:
But I prefer hearing, hearing his side of the 
THE COURT:
I understand you'd prefer it, that's perfectly understandable, but he doesn't have to do it. We're here because the State has to prove a case.
MR. JOHNSON:
Yes.
THE COURT:
Not the defendant. The defendant don't [sic] have to prove anything.
MR. JOHNSON:

*118 Okay.
THE COURT:
So you're saying you're going to hold that against him if he doesn't do anything?
MR. JOHNSON:
Yeah, I think I would.
THE COURT:
Okay.
Mr. Champagne, you still feel the same way?
MR. CHAMPAGNE:
Yes.
THE COURT:
Anybody else in this group?
MR. WEBER:
I feel the same way too.
THE COURT:
Mr. Weber.
Anybody else in this group?
Mr. White?
MR. WHITE:
Yes.
THE COURT:
Anyone else?
(No response)
THE COURT:
The rest of you can all assure me that you will follow the law and not hold that against the defendant?
(No response)
THE COURT:
Okay.
MR. LILLIAN:
Your Honor, I must ask 
THE COURT:
Note your objection.
Okay. Okay. Do any of you have any reason whatsoever, any reason whatsoever why you can't sit in this jury and be fair and impartial, fair and impartial meaning fair to both sides? Any reason whatsoever other than what we've already heard?
(No response)
THE COURT:
None?
Okay. Thank you.
In a bench conference later during voir dire, defense counsel moved for a mistrial, on the basis of the judge's remarks that she would like to hear from other defendants. The trial judge denied the mistrial motion.
La.C.Cr.P. art. 770 requires the trial judge to grant a defendant's motion for mistrial when the judge, district attorney or court official makes certain remarks, as follows:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * *
(3) The failure of the defendant to testify in his own defense;
* * *
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
According to La.C.Cr.P. art. 771, upon request of the State or the defendant, the court shall promptly admonish the jury when a prejudicial remark that is not within the scope of La.C.Cr.P. art. 770 is made during trial or argument. Article 771 provides further that the court may grant a *119 mistrial if it is not satisfied that the admonition was sufficient to assure a fair trial for the defendant.[2]
However, a mistrial is a drastic remedy and, except in instances where a mistrial is mandatory, it is warranted only when the defendant suffers substantial prejudice that deprived him of any reasonable expectation of a fair trial. State v. Harris, 00-3459, pp. 8-9 (La.2/26/02), 812 So.2d 612, 617.
The trial judge's comments in this case are similar to those of the trial judge in State v. Willie, 410 So.2d 1019 (La.1982), in which the Louisiana Supreme Court concluded that the judge's remarks to the jury during voir dire were not a direct or indirect reference to defendant's failure to testify. In that case, the trial judge made the following statements to the jury:
Now if the state does prove in presenting their case guilt in your mind beyond a reasonable doubt, then you would legitimately expect something else, but it all depends on the state's proof, not on what the defense puts up ... what you weigh is the state's evidence. The state has the burden. They present their case first, and if from the evidence which they have presented, they have failed to prove something that is necessary in order to obtain guilt, then at that time the defense has the right not to put on anything, just to rest on the inadequacy of the state's case....
What you're doing is weighing the state's case. You don't weigh the defendant's case until after you weigh the state's case. They have the burden to carry out proof. If they fail to do it, then he doesn't have to do anything, because of this rule of presumption of innocence, you see. Now, if they do it, you might expect something else. The first thing (defense counsel objects).... The state has to prove its case beyond a reasonable doubt, and if you feel like they have not done that after they present their case, then he would be entitled to a verdict of not guilty; in other words, you weigh the evidence presented by the state before you expect anything. Can you do that?
You would not necessarily expect him to do anything, you would weigh the evidence of the case of the state as to what they presented.
Id. at 1025-1026.
The Willie court evaluated the remarks under Article 770(3) and found that the judge had not referred directly or indirectly to the defendant's failure to testify in his own defense, but that the remarks were "dangerously close." Id. at 1026. Further, the Willie court stated that "careful scrutiny" had convinced the supreme court that the comment was intended to inform the jury of the State's burden to prove the defendant's guilt beyond a reasonable doubt, regardless of whether the defendant presented any evidence. Finally, the Willie court concluded that the average juror would not have inferred a reference to the defendant's failure to testify from the judge's comment. Id. at 1026.
Here, we are satisfied that the trial judge's purpose was to explain the law to the prospective jurors. Further, the judge's remarks occurred in the midst of her explanation of the law and her attempt to ferret out any bias that the prospective *120 jurors might have regarding defendant's right not to testify. Accordingly, we conclude the trial judge did not err in denying the motion for a mistrial.

ASSIGNMENT OF ERROR NUMBER TWO
In this assignment the defendant argues that the evidence is insufficient to support his conviction, because the State failed to prove he was legally intoxicated. Specifically, the defendant contends the evidence did not exclude the reasonable hypothesis of innocence that other circumstances could have accounted for his behavior, including his medical condition and the shock from the accident.
The defendant specifically does not challenge his prior convictions in this assignment.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
Under La.R.S. 15:438, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." However, this requirement does not establish a standard separate from the Jackson standard, but provides a helpful methodology for determining the existence of reasonable doubt. State v. Jones, 98-842 (La.App. 5 Cir. 2/10/99), 729 So.2d 57, 63.
In assessing other possible hypotheses in circumstantial evidence cases, the appellate court does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, 1020, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994). Instead, the reviewing court evaluates the evidence in the light most favorable to the prosecution and determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under the Jackson standard. Id.
At the time of the underlying offense in May 2001, La.R.S. 14:98 provided in pertinent part:
A. (1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:
(a) The operator is under the influence of alcoholic beverages; or
(b) The operator's blood alcohol concentration is 0.10 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood....
In order to convict a defendant of driving while intoxicated, the State only needs to prove that the defendant was operating a vehicle and that the defendant was under the influence of alcohol or drugs. State v. Bourgeois, 00-1585 (La.App. 5 Cir. 3/14/01), 785 So.2d 848, 853. Intoxication, with its attendant behavioral manifestations, is an observable condition about which a witness may testify. State v. Allen, 440 So.2d 1330, 1334 (La.1983). It is not necessary that a DWI conviction be based upon a breath or blood alcohol test; the observations of the arresting officer *121 may be sufficient to establish the defendant's guilt. State v. Conner, 02-363 (La.App. 5 Cir. 11/13/02), 833 So.2d 396, 402, writ denied, 02-3064 (La.4/25/03), 842 So.2d 396 (citing State v. Landry, 01-784 (La.App. 4 Cir. 12/12/01), 804 So.2d 791, 794).
In this case, the primary evidence of the defendant's intoxication consisted of observations of Javier Casiano and Trooper Castanoda. The State showed that the defendant was driving erratically through Casiano's testimony. Further, both Casiano and Castanoda testified that the defendant slurred his words and smelled of alcohol. In addition, Casiano saw beer cans fall out of the van. According to Trooper Castanoda, the defendant not only admitted that he had been drinking, but also he offered no alternative explanation for his behavior, such as a medical condition. Both Castanoda and Casiano said they believed the defendant had urinated on himself. Further, Castanoda testified that the defendant failed the horizontal gaze nystagmus test.
The defendant's flat tire was his explanation for his erratic driving. He also sought to convince the jury that his stumbling and slurring were caused by the shock of the accident, the fact he may not have taken his medication, and the fact that he may have eaten very little that day.
In State v. Landry, 463 So.2d 761, 764-767, (La.App. 5 Cir.1985), writ denied, 464 So.2d 1373 (La.1985), this Court held that the arresting officer's objective observations that the defendant was staggering, leaning on his car for support, slurring his speech, and had the odor of alcohol were sufficient to support his conviction for driving while intoxicated, even though he refused to submit to a field sobriety test. Accord, State v. Simard, 01-1373 (La.App. 5 Cir. 4/30/02), 817 So.2d 366.
In returning the guilty verdict, the jury obviously found the testimony of the State's witnesses more credible than the defendant's testimony. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Simard, 817 So.2d at 370. Where there is conflicting testimony about factual matters, the resolution of which depends on a determination of credibility of the witnesses, it is a matter of the weight of the evidence and not the sufficiency of the evidence. State v. Simard, supra.
Viewing the evidence in the light most favorable to the State, we find the evidence is sufficient to support the defendant's conviction. Accordingly, we find no merit to this assignment.

ERROR PATENT DISCUSSION
Pursuant to our usual procedure, we reviewed the record for errors patent.[3] We found several errors that require us to vacate the sentence and remand for re-sentencing.
First, the defendant's sentence is indeterminate, in violation of La.C.Cr.P. art. 879, because it is not clear how long he was given to pay his fine and fees and to serve his thirty-day sentence on the weekends. The trial judge initially stated that defendant had six months to complete his sentence and six months to pay his fine and fees, but she subsequently stated that the defendant had "five months to complete everything." The sentencing minute entry is of no assistance, since it reflects *122 the defendant was to serve his thirty-day sentence in five months, but had to pay his fine and fees within six months. Accordingly, we find the sentence here requires that we remand for the trial court to clarify the sentence on resentencing. See State v. Lachney, 621 So.2d 846, 848 (La.App. 5 Cir.1993).
In addition, the minute entry and the transcript conflict in two other respects. First, the minute entry reflects that defendant was to pay a probation fee of $55, but the transcript reflects that the fee was $50. Also, the minute entry reflects that the defendant must submit to inpatient substance abuse treatment for not less than four, nor m ore than six weeks, while the transcript reflects that the defendant was not to receive inpatient treatment. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983).
In addition, the trial court prematurely imposed home incarceration by ordering it to begin immediately, as opposed to the conclusion of treatment. At the time of conviction, La.R.S. 14:98(D) provided that a third DWI offender "shall" undergo an evaluation to determine the nature and extent of the offender's substance abuse disorder. Further, the statute provided that the evaluator's recommendation "shall" include a term of treatment at an inpatient facility for not less than four weeks and not more than six weeks. Thereafter, the offender must serve not less than the remaining portion of the sentence in home incarceration. La.R.S. 14:98(D)(1)(a)-(d). Because the trial judge ordered home incarceration to begin immediately, rather than at the conclusion of treatment, home incarceration was prematurely imposed.
We note, further, that the sentence is illegally lenient in two respects. First, the trial judge allowed the defendant to serve his thirty-day sentence without benefit of parole, probation, or suspension of sentence on weekends. The applicable sentencing provision, La.R.S. 14:98(D), does not provide for the thirty-day sentence to be served on weekends.[4] Second, the sentence is illegally lenient because the record does not reflect that the trial court imposed all of the required conditions of home incarceration.
La.R.S. 14:98(D)(3)(a)-(c) provides as follows:
(3)(a) An offender sentenced to home incarceration shall be supervised and shall be subject to any of the conditions of probation. The court shall specify the conditions of home incarceration which shall include but shall not be limited to the following:
(i) Electronic monitoring.
(ii) Curfew restrictions.
(iii) Home visitation at least once per month by the Department of Public Safety and Corrections.
(b) The court shall also require the offender to obtain employment and to participate in a court-approved driver improvement program at his expense. The activities of the offender outside of his home shall be limited to traveling to and from work, church services, Alcoholics *123 Anonymous meetings, or a court-approved driver improvement program.
(c) Offenders sentenced to home incarceration required under the provisions of this Section shall be subject to all other applicable provisions of Code of Criminal Procedure Article 894.2.
The trial judge in this case made the following statements regarding home incarceration:
THE COURT:
And home incarceration, let me explain for your information, that means that activities outside of your home shall be limited to traveling to and from work, church services, substance abuse meetings and counseling, and/or court approved driver improvement program, which I'm also ordering driver improvement program also.
Nor does the record reflect that the defendant was given a certificate of conditions of home incarceration, as required by La.C.Cr.P. art. 894.2(D).
In addition, although the record contains the conditions of probation, there are two different documents setting out the conditions. One document, signed on the date of sentencing by the defendant and his attorney, roughly parallels the trial judge's recitation of the conditions of probation at sentencing. The other document, dated July 7, 2003, is signed by defendant and a Probation and Parole Officer. This document contains some conditions that are not on the first document (Special Conditions 19, 21, and 23) and two conditions that are inconsistent with those imposed by the trial court.
Specifically, the document indicates that inpatient treatment was a special condition of probation, whereas the trial judge stated that the defendant's treatment would not be inpatient.[5] Also, the document indicates that home incarceration would begin following treatment, whereas the trial court stated it would commence immediately (Special Conditions 19 and 23).
Another illegal aspect of the sentence is that the judge allowed the defendant to keep his vehicle, upon the condition that he pay his fine and fees. However, the court should have ordered that the vehicle be seized and sold, pursuant to La.R.S. 14:98(D)(2)(a), and that the proceeds be applied to specifically-designated purposes. La.R.S. 14:98(D)(2)(d). Although there are exemptions from seizure, the vehicle here does not fit within the prescribed conditions for exemption. See, LA.R.S. 14:98(D)(2)(b).
However, when listing the conditions of probation in the present case, the trial judge told the defendant that the court would order his car to be sold and impounded, with the proceeds to pay "everything out" if the defendant failed to pay his monthly supervision fee, and to pay his fine, court costs and IDB fee within six months.
Pursuant to State v. Campbell, 03-3035 (La.7/6/04), 877 So.2d 112, 115-116, as well as the court's authority under La.C.Cr.P. art. 882 to correct an illegally lenient sentence at any time, this is an additional ground for remand, for a determination of whether the vehicle should be seized and sold. See also, State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790.
Finally, we note that the trial court failed to advise defendant completely of the prescriptive period for filing post-conviction relief pursuant to La.C.Cr.P. *124 art. 930.8, in that she failed to indicate when the period began to run. In addressing this type of error, this Court has remanded the case to the district court and ordered it to inform the defendant of the provisions of La.C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this Court's opinion and to file written proof that defendant received the notice in the record. State v. Gibson, 97-1203 (La.App. 5 Cir. 3/25/98), 708 So.2d 1276, 1281.
For the foregoing reasons, we affirm the defendant's conviction, but vacate the sentence and remand the matter for resentencing to clarify the sentence and to correct the other errors noted in this opinion, in accordance with La.R.S. 14:98(D) and La.C.Cr.P. art. 930.8.
CONVICTION AFFIRMED; SENTENCE VACATED; CASE REMANDED FOR RESENTENCING.
NOTES
[1] Defendant's motion for appeal, which was filed and granted in February 2003, was premature. However, a premature appeal need not be dismissed when a sentence is imposed after the defendant's motion for appeal is filed. State v. Washington, 98-69, p. 4 (La.App. 5 Cir. 1/26/99), 727 So.2d 673, 675.
[2] La.C.Cr.P. art. 761 provides that a jury trial begins with the examination of the first prospective juror. In this case, a panel of fourteen prospective jurors was seated and sworn and had been examined by the court when the trial court's remark was made. Thus, Article 770 applies in this case.
[3] See La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
[4] La.R.S. 14:98(D) was amended by 2001 La. Acts 1163, § 2, effective August 15, 2001, to reduce the mandatory incarceration in favor of treatment for third and fourth DWI offenders. Because the amendment was in effect by the time defendant was convicted on February 19, 2003, the amendments apply to him, even though his offense was committed before the effective date of the amendments. See, State v. Mayeux, 01-3195 (La.6/21/02), 820 So.2d 526, 528-529.
[5] At the time of sentencing, La.R.S. 14:98(D)(1)(b) contemplated inpatient treatment for third-DWI offenders.