MARC E. JOHNSON, Judge.
| ¡Defendant, Tonya Victor, appeals her competency to proceed to trial and her conviction for out-of-state bail jumping from the 40th Judicial District Court, Division “B”. For the following reasons, we affirm the conviction and sentence.
FACTS AND PROCEDURAL HISTORY
Defendant and her husband, Errol Victor, Sr., were charged with second degree murder and were released on bond. Lieutenant Kenneth Mitchell of the St. John the Baptist Sheriffs Office testified that he was scheduled to testify in a proceeding involving Defendant and her husband, on August 15, 2011, but that they failed to appear. A bench warrant was issued for their arrest, and Lieutenant Gordon Jeff-coat and Lieutenant Keith Brooks were sent to Defendant’s residence. While there, the officers met with Defendant’s son, Marcus Victor, who advised them that his parents were scheduled to be in court that morning. The officers were permitted to enter the residence at which time it was discovered that Defendant’s cellular phone was no longer in service. Marcus Victor informed the |sofficers that his parents had been staying at the Best Western Hotel in LaPlace, Louisiana. The officers relocated to the' Best Western, where a hotel clerk informed them that Defendant had last stayed at the hotel in May of 2011.
The following day, August 16, 2011, Defendant and her husband were again ordered to be present in court but failed to appear. Based on their failure to appear, a warrant for their arrest on charges of bail jumping was issued. With the assistance of the United States Marshals and the Attorney General’s Office of Fugitive Apprehension, Defendant and her husband were later apprehended in the State of Georgia.
Detective Christine Chauvin, also of the St. John Sheriffs Office, testified that she was alerted that Defendant was located in Tift County, Georgia and had been taken into custody. Detective Chauvin testified *121 that on July 9, 2012, she traveled to Tift County to testify at Defendant’s extradition hearing where she positively identified Defendant as the individual for whom the outstanding arrest warrant was issued. Defendant was subsequently extradited to Louisiana and booked on the outstanding warrant.
On August 7, 2012, the District Attorney for St. John the Baptist Parish filed a bill of information charging Defendant and her husband,[1] with out-of-state bail jumping, in violation of La. R.S. 14:110.1.1.[2] On August 8, 2012, Defendant was arraigned but did not enter a plea, noting that she wished to represent herself. As a result, the trial court entered a plea of not guilty on Defendant’s behalf.
|4On November 26, 2012, a hearing on Defendant’s Motion to Terminate Appointment of Public Defender was held. After conducting a Faretta[3] hearing, the trial court determined that Defendant had voluntarily and knowingly waived her Sixth Amendment right to counsel and found her competent to represent herself.
On January 24, 2013, the trial court denied Defendant’s Motion to Recuse Judge Mary H. Becnel, Motion for Recusal for all Judges that Sits [sic] En Banc in the 40th Judicial District Court for the Parish of St. John the Baptist in Both Civil and Criminal Matters, and Motion to have Louisiana Supreme Court Appoint Special Judges to Hear All Pending Trials and Hearings and an Order of Recusal, filed on January 17, 2013. On February 15, 2013, the trial court also denied Defendant’s motion to recuse the District Attorney’s office. On February 20, 2013, the trial court granted the State’s Motion to Sever Defendants. Defendant proceeded to trial on April 16, 2013, after which a twelve-person jury returned a verdict of guilty as charged for out-of-state bail jumping.
Defendant filed a motion for appeal on May 7, 2013, which was granted by the trial court on May 9, 2013. On May 20, 2013, Defendant was sentenced to three years imprisonment at hard labor, with credit for time served, and a $2,000.00 fine. The trial court then re-signed Defendant’s May 7, 2013 motion for appeal and changed the date of the granting of the motion, noting it was previously filed and granted prematurely.
On June 24, 2013, Defendant filed a motion for new trial. The trial court denied Defendant’s untimely motion on June 25, 2013.[4] The instant appeal follows.
*122 | ¡¡ASSIGNMENTS OF ERROR
On appeal, Defendant alleges the trial court erred in 1) allowing her to represent herself when there was no Faretta hearing or colloquy of such on the record, and 2) finding she was competent to proceed to trial without ordering a competency evaluation sua sponte.
LAW AND ANALYSIS

Jurisdiction

This matter was tried on April 16, 2013, after which a twelve-person jury returned a verdict of guilty as charged of out-of-state bail jumping. On May 7, 2013, Defendant filed a pro se motion for appeal, which was granted by the trial court on May 9, 2013. On May 20, 2013, Defendant was sentenced to three years imprisonment at hard labor, with credit for time served, and a $2,000.00 fine. After sentencing, the trial court then re-signed Defendant’s May 7, 2013 motion for appeal and changed the date of the granting of the motion to May 20, 2013, noting it was previously prematurely filed and erroneously granted on May 9, 2013.
Pursuant to La.C.Cr.P. art. 916,[5] a trial court is divested of jurisdiction upon the granting of a defendant’s motion for an appeal. State v. Johnson, 13-75 (La.App.6 5 Cir. 10/9/13); 128 So.3d 325, 327. Once the trial court is divested of jurisdiction, it may take only certain specified actions, none of which include imposing sentence, except an enhanced sentence pursuant to La. R.S. 15:529.1. See La.C.Cr.P. art. 916. Thus, after the trial court granted Defendant’s pro se motion for appeal on May 9, 2013, the trial court was divested of jurisdiction to sentence Defendant. See Johnson, supra. Consequently, we find the trial judge was without jurisdiction to impose Defendant’s sentence.
Although the trial court was divested of jurisdiction when it granted Defendant’s motion for an appeal on May 9, 2013, a premature appeal need not always be dismissed when a sentence is imposed after the defendant’s motion for an appeal has been filed. This Court has found harmless a trial court’s imposition of sentence after having been divested of jurisdiction. In State v. Lampkin, 12-391 (La.App. 5 Cir. 5/16/13); 119 So.3d 158, 162, although the defendant’s motion for appeal was filed and granted before he was sentenced, this Court chose not to dismiss the defendant’s appeal “as this would only result in a delay of defendant’s right to appellate review.” See also, State v. Simms, 03-1459 (La.App. 5 Cir. 12/28/04); 892 So.2d 111, 114 n. 1; State v. Washington, 98-69 (La.App. 5 Cir. 1/26/99); 727 So.2d 673, 675; State v. Conrad, 620 So.2d *123 366, 368 n. 1 (La.App. 5 Cir.1993), writ granted, case remanded, 625 So.2d 158 (La.1993); State v. Brooks, 93-1767 (La.App. 4 Cir. 2/25/94); 633 So.2d 816, 818, writ denied, 94-1939 (La.9/3/96), 678 So.2d 548 (choosing not to dismiss the appeal since it would “result in a delay of the appellate process, and hinder [the] defendant’s right to appeal.”).
17Here, the trial court acknowledged its error, noting that Defendant’s motion for appeal was filed and granted prematurely and thus re-signed Defendant’s motion after sentencing. Additionally, Defendant does not raise any sentencing, issues on appeal. Accordingly, under the circumstances of this case, we find that any sentencing error relating to timeliness to be harmless and a remand unnecessary.

Faretta Hearing

Defendant’s appellate counsel argues that Defendant was permitted to represent herself without the court first conducting the requisite Faretta hearing to determine if she knowingly waived her right to counsel. Appellate counsel notes that there is reference to a colloquy conducted in this case, but that the colloquy is not contained in the record. Thus, appellate counsel concludes that the record does not indicate that Defendant was ever questioned in accordance with Faretta, and accordingly, requests that her conviction and sentence be vacated.
In response, the State submits that at the Faretta hearing conducted on November 26, 2012, Defendant was found competent to represent herself, after being fully informed and made aware of the dangers of self-representation. During the colloquy, the State contends that Defendant was able to understand and appreciate the nature of the proceedings, the possible consequences of the proceedings, and the disadvantages of self-representation. The State maintains that Defendant stated that she understood her rights and the perils of self-representation but still wished to represent herself without aid of counsel. After a thorough colloquy, Defendant was then found competent to represent herself. Thus, the State concludes that Defendant knowingly and intelligently waived her right to assistance of counsel as required under Faretta.
^Defendant’s contention that a Faretta hearing was not conducted in this case is misplaced. At the time of the filing of Defendant’s appellate brief, the record was devoid of the Faretta hearing transcript. However, on February 13, 2014, this Court granted the State’s request to have the record on appeal supplemented with the transcript from the November 26, 2012 Faretta hearing. This transcript is now contained in the record on appeal, which evidences that the proper inquiries were made prior to the trial court’s determination that Defendant knowingly and intelligently waived her right to counsel.
Specifically, the record on appeal indicates that at Defendant’s arraignment on August 8, 2012, Defendant stated that she wished to represent herself. She later filed a written motion to terminate appointment of the public defender’s office. Within the motion, Defendant stated she previously had a Faretta hearing, in a separate matter, before the same trial court judge. She further maintained that a detailed colloquy was previously conducted and thus, the requisite Faretta hearing had already been satisfied and ruled upon. Attached to the motion, Defendant submitted an affidavit, which stated that “another Faretta hearing would be repetitive and unwarranted because it is an issue that has already been adjudicated, settled, resolved and ruled upon” when Defendant and her husband were granted the right to represent themselves in a separate matter on pending charges of second degree murder.
*124 Nevertheless, a Faretta hearing was conducted on November 26, 2012. At the hearing, the trial court questioned Defendant as to whether she understood the nature of the charge against her as well as the sentencing range for the charge. Defendant indicated that she understood. The trial judge then informed Defendant of her right of self-representation, however, warned her that it was against her best interest to represent herself in this matter. The trial judge explained the perils of | sself-representation and strongly discouraged it. She described the benefits of being represented by counsel and noted the complex nature of legal proceedings. The trial judge further informed Defendant that she would receive no special treatment and that she would be held to the same rules of procedure and evidence. Defendant indicated that she understood and despite knowing the disadvantages and the fact that she was facing a possible prison sentence if convicted, stated that she still wished to represent herself. De-Tendant indicated that she did not wish to be represented by the Public Defender’s Office because she felt they were not representing her in “the proper way that I feel like I need to be represented.” Defendant further stated that she understood that her husband could not represent her and that despite being co-defendants, they had separate interests that could possibly be adverse to one another in the future.
The trial judge also told Defendant that by representing herself she may inadvertently interfere with her right against self-incrimination. The trial judge informed Defendant that by representing herself she would be exposing herself to the jury in such a manner that she would not otherwise be exposed if represented by counsel. The trial court warned that such exposure could result in inflaming the jury due to her words, actions, or behavior, or due to a misunderstanding of her words, actions, or behavior. Defendant stated that she understood.
The trial judge also inquired into whether Defendant would be able to conduct herself in an orderly manner and warned her she would be precluded from representing herself if it was later determined that she was deliberately engaging in obstructionist misconduct. Defendant stated that she would be able to conduct herself in an orderly manner and understood that the right of self-representation is not a license to abuse the dignity of the courtroom.
|inThe trial court further informed Defendant that in representing herself, she would be responsible for formulating her own trial strategy, determining her own theory of her defense, choosing witnesses to subpoena and call to the stand, formulating questions to ask the witnesses, choosing whether to take the stand and testify, and performing opening and closing statements. Defendant stated that she understood.
The trial court also advised Defendant of the functions of an attorney who could remain on the case in an advisory capacity to help with procedural matters and proper courtroom conduct, to which Defendant stated, “I have my own advisor.” Before continuing, the trial court again asked Defendant if it was still her desire to represent herself. Defendant answered in the affirmative. The trial court then went on to question Defendant about her background. She determined that Defendant was thirty-eight years old, graduated from high school and completed two years of college, could read, write, and understand the English language, and prior to her arrest had owned her own business. It was determined that Defendant did not have any physical or mental impairment that could have affected her ability to *125 make the decision, and that Defendant was not under the influence of drugs or alcohol. When asked by the trial judge if there was anything she should know that may be affecting Defendant’s ability to make a reasoned decision regarding her representation, Defendant stated, “no, ma’am.” Defendant was then asked to explain to the court the charges brought against her and her knowledge of courtroom procedure. Defendant indicated that she was being charged with bail-jumping and stated that she had prior legal experience in a civil matter.
The trial court informed Defendant that by electing to represent herself, she was giving up her right to be represented by counsel. Defendant indicated that she understood. The trial court also inquired into whether Defendant was being In pressured by her spouse to waive her right to counsel to which Defendant indicated that she was not.
Based on the foregoing colloquy, the trial court stated that under the “totality of the circumstances, included proceedings thus far, defendant’s answers to questions, defendant’s benefit of consultation with counsel, and despite cautions by the Court, the Court finds the defendant is competent to waive her right to counsel and that she is knowingly, intelligently, freely, and voluntarily waiving her right to counsel.” Thus, it was ordered that Defendant be permitted to represent herself in this case.[6]
The Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution give a defendant the right to counsel as well as the right to defend himself. A defendant may represent himself only if he makes an unequivocal request to represent himself and knowingly and intelligently waives his right to counsel. Faretta, supra; State v. Bridgewater, 00-1529, pp. 17-18 (La.1/15/02), 823 So.2d 877, 894, cert. denied, 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003); State v. Bruce, 03-918 (La.App. 5 Cir. 12/30/03); 864 So.2d 854, 857. Assertion of that right “must also be clear and unequivocal.” State v. Bell, 09-0199 (La.11/30/10); 53 So.3d 437, 448, cert. denied, — U.S. -, 131 S.Ct. 3035, 180 L.Ed.2d 856 (2011).
In accepting a waiver of counsel, the trial court should advise the defendant of the nature of the charges, the penalty range for the charges, and the dangers and disadvantages of self-representation, such as the failure to recognize objections to inadmissible evidence and the inability to adhere to technical rules governing Infriáis. Bruce, 864 So.2d at 857. In addition, the court should inquire into the defendant’s age, education, and mental condition and should determine according to the totality of circumstances whether the accused understands the significance of the waiver. Id.
Once the defendant has made an unequivocal request to represent himself, the trial court must determine whether the defendant is competent to waive counsel and is “voluntarily exercising informed free will.” State v. Santos, 99-1897 (La.9/15/00); 770 So.2d 319, 321. The competency at issue is a defendant’s corn- *126 petence to waive his right to counsel and not his competence to represent himself. Id.
Whether a defendant has knowingly, intelligently, and unequivocally asserted the right to self-representation must be determined on a case-by-case basis, considering the facts and circumstances of each case. State v. Leger, 05-11 (La.7/10/06); 936 So.2d 108, 147-48, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007). The question of whether a defendant properly waived his or her right to counsel should not be judged on what happened subsequent to the waiver of counsel; rather, it is the record made in waiving the right to counsel that is determinative of whether this right was properly waived. State v. George, 98-1149 (La.App. 5 Cir. 3/30/99); 743 So.2d 685, 689.
The trial court is given much discretion in determining whether the defendant’s waiver was knowing and intelligent. State v. LaGarde, 07-288 (La.App. 5 Cir. 10/30/07); 970 So.2d 1111, 1120. An appellate court should not reverse the trial court ruling absent an abuse of its discretion. Id.
In the instant case, we find that the trial judge did not abuse her discretion in granting Defendant’s request to represent herself. During the Faretta hearing, the trial judge determined Defendant’s age, education, employment history, her ability |1sto read, write, and understand the English language, and her familiarity with the legal system. The trial judge also ascertained that Defendant understood the nature of the charged offense, as well as the sentencing range if convicted. The trial judge advised Defendant of the dangers and disadvantages of self-representation, and Defendant indicated she understood them. Defendant was informed that by choosing to represent herself she would be giving up her right to counsel. She was further informed of her right against self-incrimination and that by representing herself she would be exposing herself to the jury in such a manner that she would not otherwise be exposed if represented by counsel. Defendant was advised by the trial court on the complex nature of legal proceedings and informed of the various trial tasks she would be required to perform. It was further determined that Defendant did not have any physical or mental impairments that might affect her ability to waive her right to counsel. Additionally, Defendant clearly and unequivocally stated that she wanted to represent herself.
In light of the foregoing, we find that under the totality of the circumstances, including the trial judge’s lengthy interaction with Defendant at the Faretta hearing, that Defendant’s waiver of her right to counsel was knowingly, intelligently, and voluntarily made, and the assertion of the right to represent herself was clear and unequivocal.

Competency to Proceed

Defendant argues that the trial court should have ordered a competency evaluation prior to finding her competent to proceed to trial. She contends that the trial court never considered the likelihood that her non-responsive and irrational behavior was the product of “defective mental processes” that should have been evaluated by competent mental health professionals. Defendant maintains that the trial judge was not qualified to discern whether her self-destructive behavior, |14including her refusal to participate in the majority of the proceedings, was the product of a mental defect. Accordingly, Defendant concludes the trial court abused its discretion by failing to stop the trial and order a competency evaluation to ensure that she was *127 competent and to ensure that she was making decisions free of any mental disease or defect.
In response, the State contends that neither Defendant’s originally appointed defense counsel, the State, nor the trial court had any reason to doubt Defendant’s competency. The State asserts that Defendant’s “irrational behavior” was obstructive in nature rather than self-destructive. The State maintains that the issue was not one of incapacity or incompetency, but one of Defendant’s persistent desire to represent herself without assistance of counsel. The State concludes that the trial court ensured Defendant was competent to represent herself at the Faretta hearing and that Defendant did not give the trial court any reason to order a competency evaluation of Defendant on its own motion.
According to La.C.Cr.P. art. 641, “[m]ental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity' to understand the proceedings against him or to assist in his defense.” A defendant’s mental incapacity to proceed may be raised at any time by the defense, the district attorney, or the trial court. La.C.Cr.P. art. 642. When the question of the defendant’s mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution, except the institution of prosecution, until the defendant is found to have the mental capacity to proceed. Id.
The trial judge is only required to order a mental examination of the defendant when he has a reasonable ground to doubt the defendant’s mental capacity to proceed. La.C.Cr.P. art. 643; State v. Pugh, 02-171 (La.App. 5 Cir. 10/16/02); 831 So.2d 341, 349. The ordering of a mental examination falls within |1Rthe sound discretion of the court. State v. Clark, 367 So.2d 311, 313 (La.1979). The trial court’s ruling will not be disturbed on appeal absent a clear showing of an abuse of that discretion. State v. Wilkerson, 403 So.2d 652, 658 (La.1981). Even if the defendant urges insanity as a defense, there must be sufficient evidence to raise a reasonable doubt as to such capacity before the article’s mandate is activated. Clark, 367 So.2d at 313. Moreover, there must be substantial doubt as to mental capacity before refusal to order an examination constitutes an abuse of the trial court’s discretion. Id. The question of whether the defendant was deprived of his due process right to a determination of his competency contemporaneous to trial turns on whether the trial judge received information that, if objectively considered, should reasonably have raised a doubt about defendant’s competency and alerted the judge to the possibility that the defendant could neither understand the proceedings nor appreciate their significance, nor rationally aid in his defense. State v. Snyder, 98-1078 (La.4/14/99); 750 So.2d 832, 846 (citing Lokos v. Capps, 625 F.2d 1258, 1261 (5th Cir.1980)); State v. Williams, 02-1016 (La.App. 5 Cir. 2/25/03); 841 So.2d 936, 942, writ denied, 2003-2205 (La.8/20/04); 882 So.2d 571.
In the instant case, we find that the trial judge did not abuse her discretion by not ordering a mental examination of Defendant. We conclude the record is devoid of any reasonable ground to doubt Defendant’s mental capacity to proceed that existed prior to trial. First, Defendant was represented by counsel prior to her Faretta hearing, and her counsel did not move for a competency hearing. In addition, Defendant tendered only a plea of not guilty to the charge, rather than a dual plea including not guilty by reason of insanity. Second, the trial judge had ample opportunity to consider Defendant’s mental capacity based on her lengthy in *128 teractions with Defendant during her numerous appearances in court. Further, | t ^Defendant filed numerous pro se motions, among which was a motion to terminate representation by the Public Defender’s Office. The record further reflects that the trial court conducted a thorough Faretta hearing, and based on Defendant’s answers to a series of detailed questions, in addition to the trial court’s prior dealings with Defendant, the trial court found Defendant competent to waive her right to counsel. And although the record reflects that Defendant chose not to participate in several pre-trial hearings, as well as the examination portion of the trial, Defendant’s behavior was meant to delay the proceedings, rather than behavior indicative of a person with a mental disease or defect.
The transcripts of the proceedings, in addition to the written motions filed by Defendant, do not reflect that the trial judge had reasonable grounds to doubt Defendant’s mental capacity to proceed. There was no evidence to alert the court to the possibility that Defendant could not understand the proceedings, appreciate the significance of the proceedings, or defend herself. Thus, we conclude Defendant’s claim that the trial court erred in finding her competent to proceed to trial and in failing to order a competency evaluation sua sponte lacks merit.

Error Patent Discussion

Defendant requests an error patent review. However, this Court routinely reviews the record for errors patent in accordance with La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990), regardless of whether a defendant makes such a request. There are no errors patent that require corrective action.
DECREE
Defendant’s conviction and sentence for out-of-state bail jumping are affirmed.

AFFIRMED.

. An appeal was also filed on behalf of Errol Victor, Sr., Defendant’s husband, for the conviction of out-of-state bail jumping. This Court in State of Louisiana v. Errol Victor, Sr., 14-63 (La.App. 5 Cir. 9/24/14), 2014 WL 4724900 (unpublished opinion), affirmed his conviction and sentence.

. The bill of information was amended on April 16, 2013, to correct the date of the alleged offense from August 16, 2011, to August 15, 2011. Defendant was re-arraigned pursuant to the amendment and pleaded not guilty.

. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

. Defendant's motion for new trial was untimely because it was filed after sentencing. See, La.C.Cr.P. art. 853. Additionally, under La.C.Cr.P. art. 916, the trial court lacked jurisdiction to rule on Defendant's untimely filed motion for new trial since an order of appeal had been previously granted by the trial court. However, because Defendant did not raise the denial of his motion for new trial on appeal, "any error with respect to the timing of the motion and its denial is harmless.” See State v. Robinson, 98-0005 (La.App. 4 Cir. 9/29/99); 743 So.2d 814, 815-16, where the trial court denied the defendant’s motion for a new trial which was filed after he was sentenced and after his motion for an appeal was granted. The fourth circuit found that although the trial court erred in ruling on the motion for a new trial, because the defendant did not raise the denial of his motion for a new trial on appeal, "any error with respect *122 to the timing of the motion and its denial is harmless.”

. La.C.Cr.P. art. 916 provides that, once the trial court enters the order of appeal and is divested of jurisdiction, it only has authority to take certain actions as provided by law, including:
1. Extend the return day of the appeal, the time for filing assignments of error, or the time for filing per curiam comments in accordance with Articles 844 and 919.
2. Correct an error or deficiency in the record.
3. Correct an illegal sentence or take other appropriate action pursuant to a properly made or Sled motion to reconsider sentence.
4. Take all action concerning bail permitted by Title VIII.
5. Furnish per curiam comments.
6. Render an interlocutory order or a definitive judgment concerning a ministerial matter not in controversy on appeal.
7. Impose the penalty provided by Article 844.
8. Sentence the defendant pursuant to a conviction under the Habitual Offender Law as set forth in R.S. 15:529.1.

. The trial court further appointed Brian Woods from the Public Defender’s Office as stand-by counsel, to assist Defendant and to be available to represent Defendant in the event that termination of her self-representation should become necessary. The Public Defender’s Office was later permitted to withdraw from the case as stand-by counsel due to a conflict pertaining to Defendant’s filing of a lawsuit against Mr. Woods. Prior to granting the motion to withdraw, Defendant indicated that it was still her wish to represent herself without help from the Public Defender’s Office.