921 So.2d 1060 (2006)
STATE of Louisiana
v.
Travis JOSEPH.
No. 05-KA-368.
Court of Appeal of Louisiana, Fifth Circuit.
January 17, 2006.
*1061 Hon. Harry J. Morel, Jr., District Attorney, David L. Chaisson, Assistant District Attorney, Hahnville, Louisiana, for Plaintiff/Appellee.
Jane L. Beebe, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges JAMES L. CANNELLA, SUSAN M. CHEHARDY, and WALTER J. ROTHSCHILD.
JAMES L. CANNELLA, Judge.
The Defendant, Travis Joseph, appeals from his conviction of unauthorized use of a motor vehicle and sentence of seven *1062 years imprisonment at hard labor. For the reasons which follow, we affirm and remand.
The St. Charles Parish District Attorney filed a bill of information on July 1, 2004, charging the Defendant with unauthorized use of a motor vehicle, a violation of La. R.S. 14:68.4. Defendant was arraigned on July 22, 2004 and pled not guilty. Trial was held before a six member jury on September 28 and 29, 2004.
Lionel Harvey (Harvey) testified that he lives in Orleans Parish and owns a 1999 blue Dodge Durango sports utility vehicle. His vehicle was stolen from in front of his home at about 2:30 a.m. on June 25, 2004. He reported the theft to police that day. Harvey testified that he did not give anyone permission to use the vehicle. He further testified that there was no damage to the Durango's steering column prior to the theft.
Deputy Stephen Stewart of the St. Charles Parish Sheriff's Office testified that he was on duty at 8:00 p.m. on June 28, 2004. While stopped on Louisiana Highway 52 at Canal Street, he saw a blue Dodge Durango traveling at a high rate of speed. Using Doppler Radar, he clocked the vehicle's speed at 55 miles per hour, 20 miles per hour over the posted speed limit. Deputy Stewart activated his overhead lights and siren, followed and attempted to stop the Durango. The vehicle continued in a reckless manner, speeding past several other vehicles and forcing at least one vehicle off the highway. Deputy Stewart continued to follow the Durango through a residential neighborhood. The chase eventually took them to a wooded area. At that point Deputy Stewart took an alternate route in hope of blocking the only exit from the neighborhood.
Deputy Tate Roussel testified that Deputy Stewart notified him that he was in pursuit of a stolen vehicle. Deputy Roussel and Deputy Damion Dyson, an officer in training, joined the chase. Deputy Roussel and Deputy Dyson followed the Durango until it entered the wooded area and slowed considerably. Deputy Roussel testified that he and Deputy Dyson exited their police cruiser and approached the vehicle. The Durango came to a stop in a ditch. Both Deputy Roussel and Deputy Dyson testified that the Defendant exited the driver's side of the vehicle. Two other persons escaped from the passenger side and fled in different directions. The officers apprehended the Defendant, but were unable to catch the other two persons.
Deputy Roussel testified that when he looked inside the Durango, he saw that the steering column had been damaged and the ignition had been defeated and wrapped in duct tape. There was a fake key in the ignition, as if someone were trying to conceal the defeated ignition lock. Deputy Roussel stated that a defeated ignition makes it easier to start a vehicle without a key.
Deputy Stewart testified that, when he arrived at the scene, he found that the Defendant had been placed in handcuffs. Deputy Stewart advised the Defendant of his Miranda[1] rights before questioning him. He told the Defendant that he was under arrest for possession of a stolen vehicle and asked the Defendant for the names of his companions. The Defendant repeatedly refused to give Deputy Stewart the names.
Following trial, the jury returned a verdict of guilty as charged. On December 6, 2004, the Defendant filed a motion for a New Trial, and a Motion for Post-verdict Judgment of Acquittal. The trial court heard arguments on both motions that day and denied them. On January 20, 2005, *1063 the trial court sentenced the Defendant to seven years imprisonment at hard labor. The Defendant filed for appeal on January 27, 2005. The trial court granted the motion on January 28, 2005. On appeal, the Defendant assigns two errors.

ASSIGNMENT OF ERROR NUMBER ONE
The Defendant argues that the trial court erred in denying his motion for new trial because the evidence presented at trial was insufficient to support his conviction for unauthorized use of a motor vehicle. The State disagrees, asserting that it sufficiently proved each element of the offense.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291; State v. Williams, 99-223, p. 6 (La.App. 5th Cir.6/30/99), 742 So.2d 604, 607. When circumstantial evidence forms the basis for a conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Williams, 99-223 at p. 8, 742 So.2d at 608. When circumstantial evidence is used to prove a case, the trial judge must instruct the jury that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438. This statutory test works with the Jackson sufficiency test to evaluate whether all evidence, direct or circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational jury. State v. Neal, 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).
La. R.S. 14:68.4 A defines the unauthorized use of a motor vehicle as follows:
Unauthorized use of a motor vehicle is the intentional taking or use of a motor vehicle which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the motor vehicle permanently.
This Court, while acknowledging that there are few published cases interpreting La. R.S. 14:68.4, has found the jurisprudence interpreting La. R.S. 14:68 (prohibiting the unauthorized use of a movable) instructive since the two statutes proscribe the same conduct. See: State v. Varnado, 01-367, p. 4 (La.App. 5th Cir.9/13/01), 798 So.2d 191, 193; State v. Spencer, 97-811, pp. 6-7 (La.App. 5th Cir.1/27/98), 707 So.2d 119, 120.
In State v. Bias, 400 So.2d 650, 652-653 (La.1981), the Louisiana Supreme Court clarified the meaning of La. R.S. 14:68 as follows:
A person commits the crime of unauthorized use of a movable when he either takes or uses another's property without the owner's consent or by means of fraudulent practices. R.S. 14:68, although not requiring that a person act with an intent to deprive the owner permanently of his property, must reasonably be construed to require the existence of fraudulent intent. See: State v. Kelley, 241 La. 224, 128 So.2d 18 (1961). If the statute were construed otherwise, every breach of a rental contract would be included within the reach of the statute, and the Legislature certainly did not intend such a result.
....

*1064 R.S. 14:68 may be violated by a taking or use either without the consent of the owner or by means of fraudulent conduct, practices, or representations.
. . . .
... [W]e construe the present statute proscribing unauthorized use of a movable as requiring a showing of mens rea or criminal intent, since the "evil" state of mind of the actor normally distinguishes criminal acts (punishable by the state alone) from mere civil wrongs (actionable by private individuals against one another).
The Defendant argues that the State failed to show that he had the criminal intent necessary to complete the charged offense because it did not show that he was driving the stolen Durango, or that he knew it was stolen.
While there was no direct evidence at trial that the Defendant actually drove the vehicle, there was strong circumstantial evidence to that effect. The State may produce direct or circumstantial evidence of "fraudulent intent" in unauthorized use cases. Bias, supra.
Deputy Roussel testified that he was five feet away from the back of the Durango when three people exited the vehicle. He said that he then stayed with the driver of the vehicle. He identified the Defendant as the person who exited the front, driver's side door. Deputy Dyson confirmed Deputy Roussel's identification of the Defendant, testifying that he also saw the Defendant exit the Durango on the driver's side. Both deputies testified that the vehicle's two other occupants exited on the passenger side.
The Defendant's strategy was to show that the police charged him with the crime because he would not divulge the names of his companions. In support of his defense, the Defendant called Lucus Alexander (Alexander), who testified that he was fifteen to twenty feet away from the Durango when it came to a stop in the wooded area. Alexander testified that he saw the Defendant, whom he recognized from his neighborhood, exit the front passenger door. In view of the verdict, it is clear that the jury gave more weight to the police testimony, that it was the Defendant who exited on the driver's side of the vehicle, than to Alexander's testimony.
It is well settled that the judgment of a witness' credibility is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Simms, 03-1459, p. 15 (La.App. 5th Cir.12/28/04), 892 So.2d 111, 121. Where there is conflicting testimony about factual matters, the resolution of which depends on a determination of credibility of the witnesses, it is a matter of the weight, and not the sufficiency of the evidence. Simms, 03-1459 at pp. 15-16, 892 So.2d at 121.
Moreover, there was a great deal of circumstantial evidence indicating that the Defendant knew the Durango was stolen. Deputies Stewart and Roussel testified that the vehicle's ignition had been defeated and that there was duct tape on the steering column. The officers also stated that they saw a fake key in the ignition. Deputy Roussel testified that defeating the ignition enables a vehicle to be started without a key. Deputy Stewart said that in his experience he has recovered numerous stolen vehicles and found that their steering columns have been defeated in the same or similar manner. In view of the fact that the testimony indicates that the Defendant was driving the vehicle, and did not have a key to the vehicle, it is reasonable to find further that the Defendant saw the obvious signs of theft and knew the vehicle was stolen. Further, the Defendant's attempt to flee from police is also viewed as evidence of guilty knowledge. See: Illinois v. Wardlow, 528 U.S. *1065 119, 124-25, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000), in which the court commented that "[h]eadlong flightwherever it occursis the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."
Based on the foregoing, we find that there was sufficient evidence for a rational trier of fact, viewing the evidence in a light favorable to the State, to find that all reasonable hypotheses of innocence were excluded. Two officers testified that they saw the Defendant exit the driver's door of the vehicle following a car chase and the vehicle stopping in a ditch. The Defendant attempted to flee. The steering was broken and taped together and there was a fake key in the ignition. The owner of the vehicle testified that the vehicle had been stolen and that the steering column was not previously broken. Therefore, we find that the Defendant's argument, that the evidence was insufficient to support his conviction and that the trial court erred in denying his motion for new trial grounded on this assertion, lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
The Defendant complains that his seven year imprisonment sentence was excessive, arguing that the trial judge failed to consider certain mitigating circumstances in accordance with La.C.Cr.P. art. 894.1. Because the Defendant failed to file a motion to reconsider sentence, or to state the specific grounds upon which the motion is based, he is limited on appeal to a review of the sentence for constitutional excessiveness. State v. Dupre, 03-256, p. 7 (La.App. 5th Cir.5/28/03), 848 So.2d 149, 153, writ denied, 03-1978 (La.5/14/04), 872 So.2d 509.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677 (citing State v. Dorthey, 623 So.2d 1276 (La.1993)). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lobato, 603 So.2d 739, 751 (La.1992).
Three factors to be considered in reviewing a sentence for excessiveness are: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentences imposed for similar crimes by the same court and other courts. State v. Tracy, 02-0227, p. 21 (La.App. 5th Cir.10/29/02), 831 So.2d 503, 516, writ denied, 02-2900 (La.4/4/03), 840 So.2d 1213. The trial judge has wide discretion in imposing sentences within statutory limits, and a sentence will not be set aside if it is supported by the record. State v. Taylor, 02-1063, p. 11 (La.App. 5th Cir.2/25/03), 841 So.2d 894, 900, writ denied, 03-0949 (La.11/7/03), 857 So.2d 516.
The penalty range for unauthorized use of a motor vehicle is imprisonment, with or without hard labor, for not more than ten years, a fine of not more than $5000, or both. La. R.S. 14:68.4 B. While the imposed sentence is on the high end of the penalty range, we find that it is supported by the record.
In its Pre-Sentence Investigation Report, the Department of Public Safety and Corrections recommended that the trial court impose the maximum sentence based on the Defendant's reckless endangerment of several members of the community. Furthermore, the report cited a prior felony conviction for possession of cocaine, and *1066 a subsequent revocation of the probation to which he was sentenced for that offense. The Defendant also had several prior misdemeanor convictions for flight from an officer, resisting an officer, entry on property after being forbidden, and illegal possession of stolen things. The Defendant's record also shows that he had some arrests which did not lead to convictions, including those for possession of cocaine, distribution of cocaine, and battery of a police officer. At the time of his arrest for the instant offense, the Defendant was wanted on attachments for failure to pay court ordered fines.
In sentencing the Defendant, the trial judge stated that he had taken into account the fact that the Defendant had proven unmanageable while on probation. He had also considered the fact that the Defendant was not a violent offender. For that reason, the trial judge chose not to follow the department's recommendation that the Defendant be given the maximum sentence.
Based on the foregoing, we find that the record supports the sentence imposed, it is not constitutionally excessive, and we find that the trial court did not abuse its discretion in its imposition. This assignment of error has no merit.

ERRORS PATENT DISCUSSION
The record was reviewed for errors patent. La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir. 1990). The following is noted.
Following sentencing of the Defendant, the trial court failed to properly advise the Defendant of the prescriptive period for applying for post-conviction relief under La.C.Cr.P. art. 930.8. At the time of sentencing, the trial judge instructed that the Defendant "is given two years from the date of the finality of conviction to file for post-conviction relief. The notice is given in open court today." The article provides that a defendant has two years "after the judgment of conviction and sentence has become final" in which to file a post-conviction relief application. (Emphasis supplied). Since the record does not contain a copy of the written notice the court gave to the Defendant at the time of sentencing, it is not known whether it contains a complete advisement of the prescriptive period. Therefore, in an abundance of caution, we order the trial court to provide the Defendant with a complete written advisement of the post-conviction prescriptive period as set out in La.C.Cr.P. art. 930.8 and to have placed in the record written proof of the Defendant's receipt of the information.
Accordingly, for the reasons stated above, the Defendant's conviction for unauthorized use of a motor vehicle and his sentence to seven years imprisonment at hard labor are affirmed. The case is remanded to provide proof in the record of the Defendant's receipt of appropriate notice, under La.C.Cr.P. art. 930.8, of the prescriptive period for post-conviction relief.
CONVICTION AND SENTENCE AFFIRMED, CASE REMANDED.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).