NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-49

STATE OF LOUISIANA

VERSUS

ERIC HARRISON

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 05-K-0126-B
HONORABLE ELLIS J. DAIGLE, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and Elizabeth A. Pickett, Judges.

AFFIRMED.

Earl B. Taylor
District Attorney, 27th JDC
Alisa Ardoin Gothreaux
Assistant District Attorney, 27th JDC
P. O. Drawer 1968
Opelousas, LA 70571-1968
(337) 948-3041
  Counsel for State-Appellee:
  State of Louisiana

William Jarred Franklin
Louisiana Appellate Project
3001 Old Minden Road
Bossier City, LA 71112
(318) 746-7467
  Counsel for Defendant-Appellant:
  Eric Harrison

**Pickett, Judge.**

<u>STATEMENT OF FACTS</u>

In January 2005, Romayne Sandoz owned a new Lincoln Town Car, which had the license plate number MAX 806. On January 5, 2005, Mrs. Sandoz parked the car in her driveway, left it unlocked, and went inside her house. The valet key, along with all of the car's paperwork, was in the glove compartment of the car.

The next morning, Mrs. Sandoz discovered that her new car was missing. Mrs. Sandoz immediately contacted the police and gave them all of the information on the car. Mrs. Sandoz was able to get her car back a week and a day later. According to Mrs. Sandoz, upon return, the car was full of cigarette ashes and had a small dent in the back fender, but it was otherwise unharmed. Mrs. Sandoz still owns and drives the car.

Officer Jared Green worked for the Opelousas Police Department as a regular patrol officer at the time of the incident. After Officer Green received a "be on the lookout" (BOLO) notification from the police dispatcher concerning Mrs. Sandoz's vehicle, a white Lincoln Town Car with the license plate number MAX 806, Officer Green saw the car while he was working foot patrol on the evening of January 11, 2005. Officer Green and another policeman who was with him got into their vehicles and drove in the direction they had seen the white Lincoln headed. Once the officers actually began following the car, they were able to see the license plate and have the dispatcher confirm that it was the stolen vehicle.

Around midnight, the officers stopped the Lincoln at the corner of Cresswell Lane and the Interstate 49 service road. Once the car stopped, the officers ordered the three occupants to step out of the vehicle. The officers *Mirandized* the driver and

1

the passengers and took them into custody. The officers *Mirandized* the vehicle's occupants a second time once they arrived at the police station. The defendant was among the vehicle's occupants. He signed a rights and waiver of rights form before agreeing to speak to Officer Green. In his statement, the defendant admitted to driving the vehicle, but he said that he had gotten the car from Travis Newman. The officers looked for Mr. Newman but were unable to locate him.

On November 7, 2005, the St. Landry Parish District Attorney charged the defendant, Eric Harrison, with unauthorized use of a motor vehicle, in violation of La.R.S. 14:68.4. In lieu of formal arraignment, the defendant submitted a written plea of not guilty. At the conclusion of the defendant's trial in June 2006, the jury found the defendant guilty as charged. When the defendant appeared for sentencing on September 29, 2006, the district court ordered him to serve seven years at hard labor with credit for time served. At the conclusion of the defendant's sentencing hearing, he orally moved for reconsideration. On November 9, 2006, the sentencing court denied the defendant's motion to reconsider sentence.

The defendant now appeals his conviction and sentence, asserting two assignments of error.

### ASSIGNMENTS OF ERROR

1. There is insufficient evidence to prove the guilt of defendant for the offense of unauthorized use of a motor vehicle beyond a reasonable doubt.

2. The sentence imposed is excessive for the offender and offense.

2

**ERRORS PATENT**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

**ASSIGNMENT OF ERROR NO. 1**

The defendant contends that the record contains insufficient evidence to prove beyond a reasonable doubt that he was guilty of the charged offense.

In addition to Mrs. Sandoz and Officer Green, the state called as a witness twenty-nine year old Travis Newman. Mr. Newman met the prosecutor for the first time the morning of trial. He was served by the investigator with the district attorney's office and had not been found by the police. Mr. Newman reported that he was testifying because the defendant had said Mr. Newman had given him a car. The year before trial, a police officer stopped Mr. Newman, picked him up, and brought him to the city police station, where the policeman questioned him and he told the officer that he had not given the defendant a car. Mr. Newman did not remember with whom he had spoken, but the officer who questioned him was not present at the trial.

Mr. Newman said he had never been in a 2004 white Lincoln Town Car, had never ridden around in such a vehicle, and had never noticed the defendant riding in such a car. Mr. Newman did not know why the defendant would say that he had given the defendant the car. The defendant is Mr. Newman's cousin. The defendant's grandmother is married to Mr. Newman's uncle. Although Mr. Newman had associated with the defendant about three years prior to trial, Mr. Newman had stopped spending time with the defendant by January 2005. Mr. Newman had never spoken to the defendant about the case.

3

On cross-examination, Mr. Newman revealed that he had never been convicted of a crime. Mr. Newman further attested that he had been living with his mother, the defendant's cousin, and the defendant's grandmother on January 6, 2005. On re-direct examination, Mr. Newman clarified that he did not live with the defendant in January 2005. On further cross-examination, Mr. Newman denied both having the Lincoln and giving it to the defendant. Mr. Newman averred that he actually had no personal means of transport. His uncle picked him up and drove him to work every morning. Mr. Newman also stated that he had never spoken with the defendant's mother about the car. Mr. Newman reported that he had spoken to the policeman who questioned him and had offered to give a written statement, but the officer had informed Mr. Newman that he did not want a written statement. After Mr. Newman's testimony, the state rested its case, subject to rebuttal.

The defense called the defendant's mother, Laura Harrison, as its first witness. Ms. Harrison attested that, at the time of the offense, she was living with her mother, the same place Mr. Newman was living, and the defendant was living with his girlfriend. However, the defendant came to stay with her for a few days because he and his girlfriend were having problems. Ms. Harrison averred that she had seen Mr. Newman driving a white Lincoln Town Car in January 2005. When Ms. Harrison questioned Mr. Newman about the vehicle, he told her he had stolen it. Mr. Newman did not park the vehicle where they lived. He kept it someplace else and retrieved it when he wanted to use it. Several days after Mr. Newman had obtained possession of the car, Ms. Harrison became aware that her son had been arrested and accused of using the vehicle.

4

On cross-examination, Ms. Harrison stated that the defendant was not around when she saw Mr. Newman with the car. Ms. Harrison testified that Mr. Newman had the Lincoln three days before the defendant came to stay with her. Ms. Harrison went on to say that she was not sure how long the defendant was at the house because she had gone to stay with a friend for a few days. Ms. Harrison admitted that she had seen her son, accompanied by two girls, drive the car on the day of his arrest. Ms. Harrison did not tell the defendant how Mr. Newman had obtained the vehicle and did not know if the defendant was aware the car was stolen. Ms. Harrison did not report the stolen vehicle to the police because she felt that it was Mr. Newman's mother's duty to make a report. At the conclusion of cross-examination, Ms. Harrison averred that she had been convicted of shoplifting both in 1999 and in 2000.

The defendant testified as the defense's final witness. The defendant stated that, at the time of trial, he lived with his ex-girlfriend in Opelousas. The defendant went to stay with his grandmother in January 2005 after a misunderstanding between the defendant and one of his girlfriend's roommates. Mr. Newman and several others were also living with the defendant's grandmother at that time. The defendant averred that, during that time, Mr. Newman lent him the car in exchange for five dollars and a bag of marijuana. Mr. Newman did not tell the defendant that the car was stolen. The defendant picked up two young ladies and headed out of Opelousas towards Lafayette. The police stopped the defendant on his way out of Opelousas.

The defendant denied taking the car from Mrs. Sandoz's property. When the police told him that the car was stolen, the defendant replied that the car could not have been stolen because he had the keys. After the defendant told the police where

5

he had gotten the car, the officers handcuffed the defendant to a chair in the squad room and left to look for Mr. Newman.

The defendant attested that, although he had a prior criminal record, he was innocent of the charged offense. The defendant testified that he was surprised when the police told him that the car was stolen. When the defendant's attorney asked the defendant a second time if he was surprised to hear that the car was stolen, the defendant did not answer the question. Instead, he replied that he had told the police that the car could not be stolen because he had the keys. The defendant's lawyer did not ask the defendant if he knew that the car was stolen. He only asked the defendant if he was surprised to hear that the car was stolen.

On cross-examination, the defendant explained that his prior convictions were for possession of cocaine in 2001 and possession of marijuana in 2003. The defendant further stated that he did not move in with his grandmother; he just went there to stay for awhile so he could calm down. Mr. Newman did not offer the defendant the car. The defendant asked to use the car. Mr. Newman did not ask the defendant to return the car prior to the defendant's arrest. The defendant had never seen Mr. Newman in the car prior to that day and had never heard of Mr. Newman having the car prior to that day. The defendant did not ask Mr. Newman how he had gotten the car, but he assumed that it was a rental.

After the defense rested its case, the presentation of evidence concluded with the prosecution recalling Mr. Newman as a rebuttal witness. Mr. Newman clarified that he was unemployed in January 2005, but he was looking for work. He found a job and started working in April 2005. Mr. Newman did not remember talking to Ms. Harrison while he was taking groceries out of a white Town Car or having a

6

conversation with her about a stolen car. Mr. Newman again denied having anything to do with the stolen vehicle. Although Mr. Newman knows how to drive, he denied ever having owned or rented a vehicle and ever having a driver's license. Mr. Newman did not recall the defendant coming over to the house after having a fight with his girlfriend.

The defendant asserts that the state failed to prove that the defendant used the vehicle without the consent of the owner or the person in control of the vehicle. The defendant also complains that the jury should have believed his testimony rather than that of Travis Newman.

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witness. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See King*, 436 So.2d 559, citing *State v. Richardson*, 425 So.2d 1228 (La.1983).

*State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27.

Thus, "[i]t is not the function of an appellate court to assess credibility or reweigh the evidence." *State v. Smith*, 94-3116, p. 2 (La. 10/16/95), 661 So.2d 442, 443.

There are few published cases interpreting La.R.S. 14:68.4. As unauthorized use of a movable is a lesser included offense of theft, we will review pertinent legal principles pertaining to theft. *State v. Willis*, 569 So.2d 1029 (La.App. 3 Cir. 1990).

7

*UNAUTHORIZED USE OF A MOTOR VEHICLE*

"Unauthorized use of a motor vehicle is the intentional taking or use of a motor vehicle which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the motor vehicle permanently." La.R.S. 14:68.4(A).

In *State v. Joseph*, 05-368 (La.App. 5 Cir. 1/17/06), 921 So.2d 1060, the fifth circuit found sufficient evidence to support Joseph's conviction for unauthorized use of a motor vehicle. Sheriff's deputies stopped a Dodge Durango that had been reported stolen and observed Joseph exit the sports utility vehicle from the driver's side while the passengers escaped from the other side. The steering column of the Durango had been damaged, the ignition had been defeated, and a fake key had been inserted into the ignition.

In *State v. Banks*, 41,274 (La.App. 2 Cir. 9/20/06), 940 So.2d 111, the second circuit held that the evidence presented at trial was sufficient to support the defendant's conviction for unauthorized use of a motor vehicle. Banks went to a car dealership he frequently visited and was permitted to test drive a truck without supervision. The dealer asked Banks to return quickly because he wanted to close the dealership early. Banks replied that he would be back in a matter of minutes before leaving in the vehicle and not returning. After an hour and a half passed, the dealer called the police and reported the truck missing.

In *State v. Coleman*, 02-1487 (La.App. 4 Cir. 10/9/02), 830 So.2d 341, the fourth circuit found sufficient evidence to convict the defendant of unauthorized use of a vehicle where the defendant quit work without notice and did not return the vehicle that his employer had allowed him to use in the performance of his duties.

8

In *State v. Jefferson*, 97-2949 (La.App. 4 Cir. 4/21/99), 735 So.2d 769, the fourth circuit upheld the jury's conviction of the defendant for unauthorized use of a motor vehicle. A police officer noticed a vehicle slow down as he passed it in his cruiser. Once in front of the car, the officer slowed down from fifty-five miles per hour to thirty-five miles per hour, but the car did not pass the officer. The officer pulled to the side of the road, ran the license number as the car passed, and discovered that the car was stolen. When the officer stopped the vehicle, the vehicle's occupants made no attempt to elude the police, cooperated with the investigation, and had the key to the vehicle. Jefferson had been riding in the car as a passenger. During questioning, Jefferson told the police that she had borrowed the vehicle from a woman, but she did not know the woman's last name, her address, or her phone number.

In *State v. Stevenson*, 02-1152 (La.App. 4 Cir. 1/22/03), 839 So.2d 203, the fourth circuit found insufficient evidence to convict the defendant who was the driver of the car in *Jefferson* because the prosecution failed to establish that he knew the vehicle was stolen. The fourth circuit distinguished Stevenson's case from that of his co-defendant, holding that the jury could have concluded that Jefferson's testimony was suspicious and indicative of criminal knowledge and/or intent.

In *State v. Owens*, 30,903 (La.App. 2 Cir. 9/25/98), 719 So.2d 610, *writ denied*, 98-2723 (La. 2/5/99), 737 So.2d 747, the second circuit found sufficient evidence to support the defendant's conviction for unauthorized use of a motor vehicle. Sheriff's deputies found Owens in a stalled car reported stolen a few hours earlier. Owens exited the driver's side of the vehicle and attempted to walk away. A witness who saw

9

the car being taken reported that a "big guy" had taken the car, and Owens fit the description.

The statute prohibiting unauthorized use of movables is very similar to La.R.S. 14:68.4: "Unauthorized use of a movable is the intentional taking or use of a movable which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the movable permanently." La.R.S. 14:68(A). The jurisprudence interpreting La.R.S. 14:68 is instructive, therefore, in the interpretation of La.R.S. 14:68.4.

In *State v. Bias*, 400 So.2d 650 (La.1981), the supreme court clarified that criminal intent was an element of unauthorized use of a movable. A showing that the defendant intended to deprive the owner permanently of the movable is sufficient to prove the intent to deprive the owner temporarily of the movable. *State v. Reeves*, 342 So.2d 605 (La.1977).

In *State in the Interest of Batiste*, 367 So.2d 784 (La.1979), a case wherein a juvenile was charged with theft but convicted of unauthorized use of a movable, the supreme court held that the state must prove that the defendant *took* the item. Based on a finding that the juvenile had presented unrefuted evidence that he had obtained the movable lawfully, the supreme court reversed his adjudication of delinquency. This court has agreed that, when originally charged with theft, the State must prove that the defendant *took* the movable in order to have sufficient evidence to convict the defendant of unauthorized use of a movable. *Willis*, 569 So.2d 1029. However, as the defendant in the instant case was not charged with theft, the state was not required to prove that Defendant *took* the car, only that he used it with the knowledge that the owner did not consent.

10

In *State in the Interest of O.B.*, 559 So.2d 31 (La.App. 4 Cir. 1990), two juveniles accepted a ride from an adult who was driving a stolen car. While the juveniles were in the car, the driver accelerated and ran a stop sign near a marked police cruiser. The officer pursued the vehicle, a chase resulted, and the chase ended when the stolen car crashed. Both boys attempted to flee, but they were quickly apprehended by officers in the area. The left side of the steering column had been broken, so the damage was not visible to the passengers; and although there was a key in the ignition, it was not a car key. The fourth circuit concluded that there was insufficient evidence to prove the youths either took the vehicle or used it with the knowledge that it was stolen. Based thereon, the fourth circuit reversed the boys' delinquency adjudications.

In *State in the Interest of H.N.*, 97-982 (La.App. 4 Cir. 7/8/98), 717 So.2d 666, *writ denied*, 98-2099 (La. 12/11/98), 729 So.2d 589, the fourth circuit reversed a juvenile's delinquency adjudication for unauthorized use of a movable based on a finding that there was insufficient evidence to support the conviction. An officer stopped a car after receiving a radio report that shots had been fired out of a vehicle fitting the car's description. Three passengers, including H.N., were arrested, but the driver successfully evaded the officer. When the officer ran a license plate check, he discovered that the car had been stolen. When the officer inspected the car, he observed that the motor was running, but there was no key in the ignition and there was no damage to the steering column. H.N. testified that he had accepted a ride to a service station when someone he knew from the neighborhood offered H.N. and his friends a ride. H.N. averred that he did not know that the car had been stolen: the

11

steering wheel was intact, there was no broken glass, and, contrary to the officer's statement, there was a key in the ignition. *Id*.

*THEFT*

A rebuttable legal presumption exists that the person found in possession of recently stolen property is the one who took it unless the defendant gives a reasonable explanation as to how the property was lawfully obtained. La.R.S. 15:432; *See State v. Fontenot*, 95-459 (La.App. 3 Cir. 11/2/95), 664 So.2d 523, *writ granted*, 95-2920 (La. 3/22/96), 669 So.2d 1229, *aff'd in part, rev'd in part*, 95-2920 (La. 5/31/96), 675 So.2d 271; *State v. Stickney*, 120 So. 853 (La.1929); *State v. Kelley*, 23 So. 543 (La.1898). The presumption is weakened or strengthened depending on the lapse of time between the taking and the discovery of the item in the defendant's possession. *Stickney*, 120 So. 853.

This court has applied the legal presumption to possession of stolen items from a week after the theft to months after the theft. *Fontenot*, 664 So.2d at 526-27. In *Fontenot*, the supreme court reversed four of the defendant's theft convictions, finding that the stolen property were machines, which were mobile by nature, that the defendant had bought and sold those types of machines since he was a teenager, and that, therefore, the State's evidence had failed to exclude the reasonable hypothesis that the defendant had not stolen the items but was, instead, fencing the stolen property.

*ANALYSIS*

The evidence presented at trial shows that the defendant was found in possession of a stolen white Lincoln six days after it was removed, without permission, from the owners' possession. The defendant presented one hypothesis

12

of innocence at trial. He alleged that he had borrowed the automobile from his cousin. The state contradicted the defendant's allegation by presenting the testimony of the defendant's cousin, who adamantly denied ever having possessed the stolen car. The defendant at no time attempted to return the vehicle to its owners. Thus, in viewing the evidence in the light most favorable to the prosecution, the defendant both took and used the vehicle without permission and with the intent to either permanently or temporarily deprive the owner of the car.

Accordingly, this assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 2

The defendant claims that the sentence imposed by the district court is excessive. The defendant complains that his seven-year hard labor sentence is at the upper end of the sentencing range. The defendant argues that the sentence is grossly disproportionate to the crime, that it constitutes nothing more than a needless imposition of pain and suffering, and that it is tailored neither to the individual offender nor to the particular offense.

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331.

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00); 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

Louisiana Revised Statute 14:68.4(B) states that one who is convicted of "unauthorized use of a motor vehicle shall be fined not more than five thousand dollars or imprisoned with or without hard labor for not more than ten years or both." Thus, the defendant's sentence fits within the parameters of the statutory penalty. However, such a sentence may still be excessive if the sentencing court manifestly abused its discretion. *State v. Sepulvado*, 367 So.2d 762 (La.1979); *Barling*, 779 So.2d 1035.

In *Banks*, 940 So.2d 111, the second circuit determined that the defendant's ten-year sentence for unauthorized use of a motor vehicle was not excessive. Banks had an extensive criminal history, which began in 1976, and he was a fourth felony offender. Also, Banks had additional felony charges pending in both Bossier and Red

14

River Parishes. The second circuit determined that these facts were sufficient to warrant the imposition of the maximum sentence.

In *Joseph*, 921 So.2d 1060, the fifth circuit affirmed Joseph's seven-year hard labor sentence imposed for unauthorized use of a motor vehicle. The PSI recommended that Joseph receive the maximum penalty based on Joseph's reckless endangerment of several members of the community. Additionally, Joseph had a prior felony conviction for possession of cocaine with a probation revocation on the sentence imposed for the drug offense. Joseph also had several misdemeanor convictions for various offenses and several arrests that did not lead to convictions. At the time of Joseph's arrest, he was in arrears on his fine payments for his prior offenses. In mitigation, the trial court found that Joseph was not a violent offender.

In *Jefferson*, 735 So.2d 769, the fourth circuit affirmed the defendant's six-year sentence for unauthorized use of a motor vehicle. Although Jefferson was pregnant and close to term, the sentencing court found that she had a lengthy juvenile record, that she also had four prior convictions as an adult, that she had been granted parole in a previous matter, and that the parole had ultimately been revoked. Based thereon, the fourth circuit found that Jefferson's sentence was not excessive.

In *Owens*, 719 So.2d 610, the second circuit affirmed the defendant's ten-year sentence. The sentencing court found that Owens had a lengthy criminal history dating from 1967. Owens had at least seven prior convictions and was at least a second felony offender. Also, Owens had been charged with numerous additional offenses. Moreover, Owens had displayed a belligerent and uncooperative attitude.

At the sentencing hearing in the current case, the sentencing court found the following factors to be relevant in determining the length of the defendant's sentence:

the defendant was twenty-five years old at the time of sentencing; the defendant was a third felony offender with additional misdemeanor convictions; the defendant had several other felony charges pending against him; there was an undue risk that the defendant would commit another offense during his probation if the defendant received a suspended sentence; the defendant was in need of correctional treatment and a custodial environment; a lesser sentence would have deprecated the seriousness of the offense; and there were no mitigating circumstances in the matter. Based on its findings, the district court sentenced the defendant to serve seven years at hard labor with credit given for time served. On reconsideration, the trial court found that it was satisfied that the defendant's sentence was just and equitable under the circumstances.

After examining the sentences imposed upon similar offenders for the same offense, we find that the district court did not abuse its discretion in imposing a seven-year sentence for the instant offense.

The defendant's conviction and sentence are affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Rule 2-16.3, Uniform Rules, Courts of Appeal.