901 So.2d 484 (2005)
STATE of Louisiana
v.
Kenneth M. VIDAL.
No. 04-KA-1139.
Court of Appeal of Louisiana, Fifth Circuit.
March 29, 2005.
*485 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Juliet Clark, Bradley Burget, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Frank Sloan, Louisiana Appellate Project, Mandeville, LA, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and SUSAN M. CHEHARDY.
THOMAS F. DALEY, Judge.
The defendant, Kenneth Vidal, has appealed his conviction of third offense driving while intoxicated. For the reasons that follow, we affirm the conviction and remand this matter for re-sentencing.

*486 FACTS:
At trial, Louisiana State Police Trooper Eugene Narcisse testified that, on February 26, 2000, at approximately 10:34 p.m., he was traveling westbound on the West Bank Expressway service road. Trooper Narcisse was about thirty feet behind defendant's vehicle when he saw defendant make a right turn from the center lane onto Manhattan Boulevard. Trooper Narcisse activated his police lights and defendant pulled into a nearby parking lot. He testified that defendant exited the vehicle, "stumbled slightly," and "staggered" as he walked toward the officer. While Trooper Narcisse interviewed defendant, he was "swaying" and "stumbling." Trooper Narcisse testified he noticed "a very strong odor of alcohol" on defendant's breath. When the trooper asked defendant about the odor of alcohol, defendant told the trooper that he had two Crown Royal liquor drinks and one Heineken beer before operating his vehicle.
Trooper Narcisse explained that he administered the field sobriety test, which is comprised of the nystagmus test, the walk and turn, and the "one leg stand" test. Defendant performed poorly on all phases of the field sobriety test. Regarding the nystagmus test, the trooper explained that defendant's eyes lacked smooth pursuit and did not track equally. According to Trooper Narcisse, defendant's performance on the nystagmus test indicated a blood alcohol concentration of approximately.1 or greater.
Trooper Narcisse explained that defendant was unable to complete the other two tests because of his impaired condition. Before starting the walk and turn test, defendant nearly fell twice and stumbled off of the line several times while performing this test. Defendant was unable to stand up without swaying, and almost fell while listening to instructions. Trooper Narcisse testified that he terminated both tests to prevent defendant from hurting himself. Trooper Narcisse asked defendant to recite the alphabet, but defendant only reached the letter "D" before stating that he was unable to complete the alphabet. Trooper Narcisse testified that defendant refused to submit to the intoxilyzer test, stating, "`I've been there before. I know not to do that.'" Trooper Narcisse then arrested defendant for third offense DWI.
According to his testimony and his medical records, defendant was diagnosed with Huntington's Chylorrhea on or about July 28, 2002. Defendant explained that this is an incurable disease that progressively gets worse. He explained that the disease causes him to be unable to grasp objects, and said that his balance, memory, and speech have become impaired.
Defendant denied that he made an illegal turn. He claimed that the officer told him that he was being stopped for nearly running into the officer. According to defendant, it was foggy that night, and he was not sure what direction the officer wanted him to proceed once the officer's lights were activated. Defendant testified that he did not recall the officer asking him to recite the alphabet, and he recited the alphabet for the trial judge upon the request of the prosecutor. Defendant said that he did not perform the walk and turn test because he did not believe it was necessary, and that he could not recall whether he performed the one leg stand test. Defendant denied that he stumbled or fell that night. However, defendant said that Huntington's could cause him to stumble or fall involuntarily.
Defendant testified on direct examination that he had one beer during lunch and a "couple of drinks" at a friend's house after he left work at 9:00 p.m. However, on cross-examination, he said that he left *487 work at 7:00 p.m. and that he consumed two mixed drinks of Crown Royal and 7-Up at his friend's house over the course of two hours. He also estimated that Trooper Narcisse pulled him over two to three hours after leaving his friend's house. Defendant denied that he was intoxicated that night, and stated that he believed he was suffering from Huntington's Chylorrhea when Trooper Narcisse stopped him.
At the conclusion of trial, defendant was found guilty of third offense driving while intoxicated and was given a three year suspended sentence. He was sentenced to one year home incarceration and two years active probation. This timely appeal followed.

LAW AND DISCUSSION:
In his sole Assignment of Error, defendant argues that the evidence is insufficient to support his conviction because the State failed to prove he was legally intoxicated. Specifically, defendant contends that the evidence did not exclude the reasonable hypothesis of innocence that clinical symptoms of Huntington's Chylorrhea, rather than effects of alcohol, could have accounted for his behavior. The State responds that the trial court rationally rejected the alternate hypothesis of innocence and that the evidence supports defendant's conviction.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998). Under LSA-R.S. 15:438, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." However, this requirement does not establish a standard separate from the Jackson standard, but provides a helpful methodology for determining the existence of reasonable doubt. State v. Jones, 98-842 (La.App. 5 Cir. 2/10/99), 729 So.2d 57, 63. In assessing other possible hypotheses in circumstantial evidence cases, the appellate court does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, 1020, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994). Instead, the reviewing court evaluates the evidence in the light most favorable to the prosecution and determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under the Jackson standard. Id.
At the time of the underlying offense in February 2000, LSA-R.S. 14:98 provided in relevant part:
A.(1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:
(a) The operator is under the influence of alcoholic beverages; or
....
In order to convict a defendant of driving while intoxicated, the State only needs to prove that the defendant was operating a vehicle and that the defendant was under the influence of alcohol or drugs. State v. Bourgeois, 00-1585 (La.App. 5 Cir. 3/14/01), 785 So.2d 848, 853. Intoxication, with its attendant behavioral manifestations, *488 is an observable condition about which a witness may testify. State v. Allen, 440 So.2d 1330, 1334 (La.1983). It is not necessary that a DWI conviction be based upon a breath or blood alcohol test; the observations of the arresting officer may be sufficient to establish the defendant's guilt. State v. Conner, 02-363 (La.App. 5 Cir. 11/13/02), 833 So.2d 396, 402, writ denied, 02-3064 (La.4/25/03), 842 So.2d 396 (citing State v. Landry, 01-784 (La.App. 4 Cir. 12/12/01), 804 So.2d 791, 794).
In this case, evidence of defendant's intoxication was shown through Trooper Narcisse's testimony. Defendant concedes in his brief that the State's evidence would have been sufficient, if the defendant had not presented a defense. Defendant contends, however, that a rational trier of fact could not have found him guilty as charged beyond a reasonable doubt because he presented evidence that the symptoms of Huntington's Chylorrhea can mimic the effects of intoxication. Defendant buttresses this claim by the pointing out that the symptoms of Huntington's Chylorrhea had evidently mimicked the effects of intoxication in July 2002, when he was stopped for DWI, but had a zero blood alcohol level.
It is undisputed that defendant has been diagnosed with Huntington's Chylorrhea. While the clinical symptoms of the disease may have been present by July 2002, there is nothing, other than defendant's testimony, to even suggest that the symptoms were present more than two years earlier when defendant was stopped by Trooper Narcisse. Of note, defendant's medical records suggest that the symptoms were not present in 2000. The progress note of July 31, 2002 indicates that defendant had a one-year history of "jerking" movements in his extremities and his face. Thus, the defendant's medical records indicate that these symptoms manifested in approximately July of 2001, which is more than one year after Trooper Narcisse arrested defendant for DWI on February 26, 2000. Additionally, defendant did not tell Trooper Narcisse that he suffered from any physical ailment or illness.[1]
Additionally, the State presented ample evidence of defendant's intoxication. Trooper Narcisse testified that he could smell alcohol on defendant's breath, and defendant admitted to the officer that he had consumed a beer and two mixed drinks. He failed the nystagmus test and could not complete the remaining portions of the field sobriety test because of his impaired condition.
In State v. Landry, 463 So.2d 761, 764-767, (La.App. 5 Cir.1985), writ denied, 464 So.2d 1373 (La.1985), this Court held that the arresting officer's objective observations that the defendant was staggering, leaning on his car for support, slurring his speech, and had the odor of alcohol were sufficient to support his conviction for driving while intoxicated, even though he refused to submit to a field sobriety test.
Prior to finding defendant guilty as charged, the trial judge stated that he found Trooper Narcisse to be more credible than the defendant. The trial judge's reasons highlighted the inconsistencies in defendant's testimony regarding when he had consumed the drinks, the fact that defendant could not recite the alphabet, and the fact that defendant never told the officer that he had any physical problems. The trial judge then stated that the State *489 had proved its case beyond a reasonable doubt that defendant was intoxicated, and found him guilty as charged.
The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Simard, 817 So.2d at 370. Where there is conflicting testimony about factual matters, the resolution of which depends on a determination of credibility of the witnesses, it is a matter of the weight of the evidence and not the sufficiency of the evidence. State v. Simard, supra. Viewed in the light most favorable to the prosecution, the possible alternative hypothesis that defendant was manifesting the effects of Huntington's Chylorrhea in February 2000 is not sufficiently reasonable that a rational trier of fact could not have found proof of guilt beyond a reasonable doubt under the Jackson standard. Accordingly, we find the evidence sufficient under the Jackson standard to support defendant's conviction.

ERROR PATENT DISCUSSION:
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
There are discrepancies between the commitment and the transcript. First, the commitment reflects that the trial judge properly advised defendant of the prescriptive period for filing post-conviction relief, whereas the transcript is silent. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983).
The State submits that there is an error patent regarding defendant's sentence in that the trial judge failed to sentence defendant in accordance with the version of LSA-R.S. 14:98(D) in effect when defendant was convicted. In particular, the State notes that the trial judge failed to order defendant to serve thirty days of the sentence without benefit of parole, probation, or suspension of sentence, failed to order defendant to undergo evaluation and treatment, failed to order the vehicle to be seized and sold, and sentenced defendant to home incarceration for less than the period of time remaining on his sentence. The State urges this Court to amend defendant's sentence, citing LSA-R.S. 15:301.1(A). The defendant responds in his reply brief that, in the event this Court affirms the conviction, the sentence should be vacated and remanded for resentencing, not amended by this Court.
LSA-R.S. 14:98(D) was amended by 2001 La. Acts 1163, § 2, effective August 15, 2001. Although the sentencing range is the same, the amendment altered the manner in which the sentence is to be served. The mandatory term of imprisonment has been reduced from six months imprisonment without benefit of probation, parole, or suspension of sentence to thirty days without benefits. LSA-R.S. 14:98(D)(1)(a). The statute also provides that "[t]he remainder of the sentence of imprisonment shall be suspended, and the offender shall be required to undergo an evaluation to determine the nature and extent of the offender's substance abuse disorder." Id. This evaluation includes a term of treatment at an inpatient facility for not less than four weeks and not more than six weeks, after which the defendant shall serve the remaining portion of the sentence in home incarceration. LSA-R.S. 14:98(D)(1)(b)(d) and LSA-R.S. 14:98(D)(3)(a)-(c).[2] Section G of the statute *490 provides the following statement of legislative purpose:
G. The legislature hereby finds and declares that conviction of a third or subsequent DWI offense is presumptive evidence of the existence of a substance abuse disorder in the offender posing a serious threat to the health and safety of the public. Further, the legislature finds that there are successful treatment methods available for treatment of addictive disorders. Court-approved substance abuse programs provided for in Subsections B, C, and D of this Section shall include a screening procedure to determine the portions of the program which may be applicable and appropriate for individual offenders and shall assess the offender's degree of alcohol abuse.
Commenting on this section in State v. Mayeux, 01-3195 (La.6/21/02), 820 So.2d 526, 529, the Louisiana Supreme Court explained "the legislature has clearly stated its intention to embrace treatment measures in preference to incarceration." State v. Mayeux held that the new amendments applied to offenders who were convicted after the effective date of the amendment, August 15, 2001, even if the offenses were committed before that date. Because the amendment was in effect by the time defendant was convicted on March 25, 2004, the amendments apply to him, even though his offense was committed before the effective date of the amendments. See, State v. Mayeux, supra.
As of March 25, 2004, LSA-R.S. 14:98(D) provided as follows for third offenders, in pertinent part:
D.(1)(a) On a conviction of a third offense, notwithstanding any other provision of law to the contrary and regardless of whether the offense occurred before or after an earlier conviction, the offender shall be imprisoned with or without hard labor for not less than one year nor more than five years and shall be fined two thousand dollars. Thirty days of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. The remainder of the sentence of imprisonment shall be suspended and the offender shall be required to undergo an evaluation to determine the nature and extent of the offender's substance abuse disorder.
(b) The treatment professional performing the evaluation shall recommend appropriate treatment modalities which shall include substance abuse treatment at an inpatient facility recommended by the Department of Health and Hospitals, office for addictive disorders and approved by the Department of Public Safety and Corrections for a period of not less than four weeks nor more than six weeks.
(c) The offender may be sentenced to additional outpatient substance abuse treatment services to meet the offender's needs if determined to be necessary by the offender's treating physician, for a period not to exceed twelve months. The follow-up treatment shall be provided in a manner to gradually decrease the intensity of treatment services.
(d) Upon successful completion of the inpatient substance abuse treatment required by this Paragraph, the offender shall be sentenced to home incarceration for not less than the period of time remaining on the offender's suspended sentence as provided in Paragraph (3) of this Subsection.

*491 (e) If the offender fails to complete the substance abuse treatment required by the provisions of this Paragraph or violates any condition of home incarceration, he shall be imprisoned for the original term of his suspended sentence with no credit for time served under home incarceration.
....
(3)(a) An offender sentenced to home incarceration shall be supervised and shall be subject to any of the conditions of probation. The court shall specify the conditions of home incarceration which shall include but shall not be limited to the following:
(i) Electronic monitoring.
(ii) Curfew restrictions.
(iii) Home visitation at least once per month by the Department of Public Safety and Corrections.
(b) The court shall also require the offender to obtain employment and to participate in a court-approved driver improvement program at his expense. The activities of the offender outside of his home shall be limited to traveling to and from work, church services, Alcoholics Anonymous meetings, or a court-approved driver improvement program.
(c) Offenders sentenced to home incarceration required under the provisions of this Section shall be subject to all other applicable provisions of Code of Criminal Procedure Article 894.2.
In addition, LSA-R.S. 14:98(D)(2)(a) provides that, "the court shall order that the vehicle being driven by the offender at the time of the offense shall be seized and impounded, and sold at auction...." According to LSA-R.S. 14:98(D)(2)(d), the proceeds of the sale shall first be used to pay court costs and towing and storage costs, with the remainder forwarded to the Council on Automobile Insurance Rates and Enforcement. There are exemptions from seizure if the vehicle was stolen or if the offender did not own the vehicle and the owner did not know that the driver was operating the vehicle while intoxicated. See, LSA-R.S. 14:98(D)(2)(b).
In the present case, the trial judge sentenced defendant to three years of imprisonment at hard labor, suspended the sentence, and ordered defendant to serve one year of home incarceration, followed by active probation for two years. The trial judge also ordered defendant to pay a $2,000.00 fine, commissioner's fees and all court costs. He also ordered defendant to submit to all of the "probationary conditions" for third offenders. Thereafter, the defense attorney stated that the sentence was under the "old law," and the trial judge replied, "All right, fine."[3] Thus, defendant's sentence is illegally lenient because he was not sentenced to the mandatory thirty days of imprisonment, the vehicle was not ordered to be seized, and the term of home incarceration is shorter than the remaining period of his sentence. The sentence is also illegally lenient because the record does not reflect that the trial judge imposed all of the mandatory conditions of home incarceration. In particular, the document listing the home incarceration conditions does not reflect that defendant was ordered to participate in a court-approved driver improvement program, as required by LSA-R.S. 14:98(D)(3)(b). Further, defendant has been deprived of the treatment opportunities *492 available to third DWI offenders under this statute. And, since defendant was not ordered to undergo treatment, home incarceration is premature, since home incarceration was to be imposed following treatment. See, LSA-R.S. 14:98(D)(1)(a)(d) as it existed in March of 2004.
In State v. Campbell, 03-3035 (La.7/6/04), 877 So.2d 112, 115-116, the Louisiana Supreme Court found, as an error patent, that the trial court's allowing a third DWI offender to keep his vehicle by paying $400.00 before the end of his probation constituted an illegal sentence. The Campbell court observed that the State had apparently acquiesced in this sentence, and had not complained of the error on appeal. Id. Recognizing its authority under LSA-C.Cr.P. art. 882 to correct an illegally lenient sentence at any time, the Campbell court remanded the matter to the district court for a determination of whether the vehicle should be seized and sold. State v. Campbell, 877 So.2d at 116, 119.
While this Court has recognized that an appellate court has the authority under LSA-C.Cr.P. art. 882 to correct an illegally lenient sentence despite the failure of either party to raise the issue in the district court or on appeal, we have also recognized that Article 882 is permissive. See, State v. Jordan, 02-820 (La.App. 5 Cir. 12/30/02), 836 So.2d 609, 613 (citing State v. Williams, 00-1725 (La.11/28/02), 800 So.2d 790). With regard to sentences for third DWI offenders that have not been in conformity with the mandatory sentencing provisions of LSA-R.S. 14:98(D), this Court has vacated and remanded for resentencing in accordance with LSA-R.S. 14:98(D). See, State v. Simms, 03-1459 (La.App. 5 Cir. 12/28/04), 892 So.2d 111, and State v. Isidore, 02-1121 (La.App. 5 Cir. 4/29/03), 845 So.2d 1123.
Accordingly, the defendant's sentence is vacated and this matter is remanded for re-sentencing in accordance with the sentencing directives of LSA-R.S. 14:98(D) as it existed when defendant was convicted in March 2004. Further, the trial court is ordered to properly inform the defendant of the time period for seeking post-conviction relief.
CONVICTION AFFIRMED; SENTENCE VACATED;MATTER REMANDED.
NOTES
[1] Defendant could not have told the trooper that he had Huntington's Chylorrhea, considering that he was not yet diagnosed with the condition. However, if indeed defendant had suffered with the symptoms of the disease at that point, nothing prevented defendant from telling the trooper that he had problems controlling his movements and with his balance.
[2] Following defendant's sentencing, this section was again amended by the legislature by 2004 La. Acts 762 § 1, which rewrote paragraph (D)(1), the introductory paragraph of subparagraph (D)(3)(a), and item (D)(3)(a)(iii). Amendments in 2003 affected other portions of this statute.
[3] Thus, it is unclear what version of LSA-R.S. 14:98(D) defendant was sentenced under because it clearly does not conform to the version of LSA-R.S. 14:98(D) in effect when defendant was sentenced in March 2004, and it does not conform to the 2000 version of LSA-R.S. 14:98(D), considering that the trial judge did not order defendant to serve any of his sentence without benefit of probation, parole, or suspension of sentence.