HANS J. LILJEBERG, Judge.
| gDefendant, Brandon D.' Winstead, filed a writ application seeking relief from his misdemeanor convictions for violations of La. R.S. 14:98(A), First Offense Driving While Intoxicated and La. R.S. 32:58, Failure to Maintain Control/Ciareless Operation of a Motor Vehicle. After reviewing defendant’s writ application, we find the evidence supports the trial court’s decision to find defendant guilty on these charges and find no other error .which would warrant the reversal of defendant’s convictions.

*568
FACTS AND PROCEDURAL HISTORY

On May 23, 2013, defendant was charged with first offense, of driving while intoxicat7 ed in violation of La. R.S. 14:98(A)(B) (count one); ■ failure to maintain | ¡jControl/careless operation of a motor vehicle in violation of La. R.S. 32:58 (count two); and driving a vehicle with a suspended license in violation of La. R.S. 32:415 (count three). Defendant was arraigned on July 2, 2013, and pleaded not guilty. On February 2, 2016, defendant’s charges were tried by the trial court.
At trial, Angelisha Wells testified that on January 19, 2013, she was employed with the Sheriffs Office.[1] She was ending her shift at around 7:00 a.m., and headed toward the Huey P. Long Bridge, on Jefferson Highway. Ms. Wells was preparing to make a left turn onto the bridge when she was made aware of a Ford truck stopped in the left lane on the opposite side of Jefferson Highway. People were blowing their horns at the truck to drive forward, but it would not move. Ms. Wells pulled up behind the truck to investigate the situation. She first knocked on the window because the driver, whom she identified as defendant at trial, appeared to be asleep. When defendant did not respond, Ms. Wells opened the driver’s side door of the truck and defendant began to lean out of the vehicle. Ms. Wells testified that the vehicle then began to. roll forward because she believed defendant’s foot was moving off of the brake as he leaned out of the vehicle. Ms. Wells reached into the truck and pushed the gear into park. When she reached over defendant, Ms. Wells smelled alcohol on defendant and she shook defendant to wake him. Ms. Wells testified that defendant appeared to be intoxicated.
Trooper Malcolm Brown with the Louisiana State Police was dispatched to the scene.[2] Ms. Wells advised him that she smelled alcohol on defendant and that he was possibly intoxicated. Trooper Brown approached the driver, and he also smelled alcohol on defendant’s breath. Trooper Brown testified that defendant’s balance was “unsure,” and his speech was slightly slurred.
USergeant Jeffrey Navo with the Jefferson Parish Sheriffs Office arrived on the scene shortly thereafter. Sergeant Navo testified that he was employed with the Sheriffs Office for fifteen years, and received instruction and training in field sobriety tests, Intoxilyzer testing and served as a field sobriety instructor. Sergeant Navo identified his Intoxilyzer Certification Card, which was issued in May 2012 and valid until May 2014.
Sergeant Navo testified that when he arrived at the scene, Trooper Brown told him he smelled alcohol on defendant. Sergeant Navo asked defendant to perform a standardized field sobriety test in the parking lot on the side of the road. When defendant exited the vehicle, Sergeant Navo also smelled alcohol on defendant and noted that defendant had slurred speech.
Sergeant Navo testified that defendant performed poorly during the standardized field sobriety tests. Defendant was first asked to perform the horizontal gaze nys-tagmus test. Sergeant Navo noted lack of smooth pursuit in both of defendant’s eyes. Of the possible six clues for the horizontal gaze nystagmus, defendant, displayed all *569 six. Defendant also performed poorly during the balancing stages of the tests.
Following the field sobriety tests, defendant was placed under arrest and advised of his rights. Defendant was then transported to the Bridge City Traffic Division, where Sergeant Navo advised defendant of his rights pertaining to the chemical test for intoxication and interviewed defendant. Sergeant Navo testified that he asked defendant whether he was operating a motor vehicle, to which defendant replied affirmatively. Defendant also stated that he had one beer at his friend’s house, and that he started drinking at 11:00 p.m. and stopped drinking at 11:30 p.m.
| ¿Sergeant Navo then asked defendant to submit a breath sample on the Intoxi-lyzer 5000. Sergeant Navo testified that he used “Instrument 68012980.” He identified the Instrument Recertification Form and testified that the Intoxilyzer 5000 machine, which he used to test defendant, was certified on October 17, 2012, and recerti-fied on February 6, 2013. Sergeant Navo testified that the machine was working correctly that day because the machine does its own check, which shows blank air samples prior to and after the running of the machine. Sergeant Navo testified that he also went through an operational checklist each time prior to using the machine, and he had no problems with the diagnostics on any of the operational checklists conducted during the testing.
Sergeant Navo testified that from 7:31 a.m., when he started going over the rights form with defendant and until the first test at 8:02 a.m., he maintained constant observation of defendant. Therefore, Sergeant Navo observed defendant for at least 15 minutes prior to conducting the first breath test. This first test resulted in an invalid sample because defendant did not blow enough air into the machine to get a valid sample. Sergeant Navo then ran an operational checklist test through the machine to make sure the machine readings were back to zero prior to asking defendant to blow into the machine a second time.
Sergeant Navo then asked defendant to blow into the machine a second time at 8:22 a.m., twenty minutes after the first test. Again, Sergeant Navo testified that he maintained constant observation of defendant during this time. Defendant provided a valid sample the second time he blew into the machine and the reading on that test was a .088 grams percent.
After hearing arguments of counsel, the trial judge found defendant guilty on count one for violating La. R.S. 14:98(A), first offense driving while intoxicated and count two, La. R.S. 32:58, failure to maintain control/careless operation. The | fitrial court found defendant not guilty on count three. On March 2, 2016, the trial judge sentenced defendant as follows: “$350 for Count One, $50 for Count Two, 120 days in jail are deferred; one year probation conditioned upon completing 32 hours of community service and the One Way for the Road Class, plus payment of the fines and costs.” Immediately thereafter, the trial judge stated that defense counsel had requested “for sentencing to be suspended such that for the delays and execution of the sentence, so you can decide or file an appeal [sic].” The trial judge further stated that she agreed to “do that” and gave defendant forty-five days to file a writ application. On April 15, 2016, defendant filed a timely writ application with this Court.

LAW AND DISCUSSION

In his pro se writ application, defendant raises several assignments of error in one long narrative. Those assignments are separated below for purposes of clarity. Defendant first argues the evidence was insufficient to support his convictions. He *570 contends that the State did not prove beyond a reasonable doubt that he was operating the vehicle or carelessly operating-it on the morning in question. Defendant indicates there was a possibility that someone else was with him in the. truck or fled the scene before the officers arrived. He indicates that there was misleading information and/or false claims without sufficient supporting evidence made by the officers involved in this case regarding the details of the incident, including whether he was asleep at the wheel or behind the wheel, whether the vehicle was moving forward, whether the shift was placed into the parked position, and the results of the field sobriety and breathalyzer tests. Defendant notes that there was no video footage from the officers’ patrol units or body cameras. He further contends that the State had no other proof of the poor 17field sobriety tests, the initial contact with defendant, or the proper conducting of the Intoxilyzer 5000 test besides the officers’ testimony at trial.
In reviewing the sufficiency, of evidence, an appellate court must determine whether the evidence, viewed in the light most favorable to the prosecution, - was. sufficient to convince a rational trier of fact that all of , the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
In the instant case, defendant was convicted of DWI first offense. At the time of the offense, La. R.S. 14:98 provided in pertinent part:
A. (1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle ... when:
(a) The operator is under the influence of alcoholic beverages; or
(b) The operator’s blood-alcohol concentration is 0.08 percent or more by weight based on grams of alcohol per one hundred cubic centimeters ofblood[.]
In order to convict an accused of driving while intoxicated, the prosecution must prove that the defendant was operating á vehicle and was under the influence of alcohol or drugs. State v. Cowden, 04-707 (La.App. 5 Cir. 11/30/04), 889 So.2d 1075, 1082, writ denied, 04-3201 (La.4/8/05), 899 So.2d 2.
The first issue is whether a rational trier of fact could have found the evidence was sufficient under the Jackson standard to show that defendant was intoxicated. Intoxication, with its attendant behavioral manifestations, is an observable condition about which a witness may testify. State v. Vidal, 04-1139 (La.App. 5 Cir. 3/29/05), 901 So.2d 484, 487-88. It is not necessary that a DWI conviction be based upon a breath or blood alcohol test; the arresting officer’s observations may be sufficient to establish the defendant’s ■ guilt. Id,, at 488.
| sIn the instant case, a rational trier of fact could have found that defendant was intoxicated. Ms. Wells testified that defendant appeared to be asleep in the driver’s seat' of his vehicle while stopped in the middle of the roadway. She knocked on the window and opened the door, and defendant still did not' wake up. When Ms. Wells opened the door and the vehicle began to roll forward, Ms. Wells reached in and pushed the gear into park. When Ms. Wells did so, she smelled alcohol on defendant. ‘ Trooper Brown and Sergeant Navo also smelled' alcohol on defendant. Defendant performed poorly on the field sobriety tests and. his speech was also slightly slurred. Based on the officer’s observations alone and the results of the field sobriety test, a rational trier of fact could have found under the Jackson standard that defendant was intoxicated. However, *571 in addition to these observations, Sergeant administered the Intoxilyzer 5000 chemical test for intoxication which showed defendant’s blood alcohol level to be .088 -grams percent, which was above the legal limit of .08 grams percent.
The next issue is whether a rational trier of fact could have found the evidence was sufficient under the Jackson standard to show that defendant was operating a vehicle while1 intoxicated. La. R.S. 14:98 does not require proof that the defendant was driving a vehicle, and the jurisprudence recognizes that the. term “operating” is broader than the term “driving.” State v. Rossi 98-1253 (La. App. 5 Cir. 4/14/99), 734 So.2d 102, writ denied, 99-0605 (La.4/23/99); 742 So.2d 886. However, in order to operate a motor vehicle, defendant must have exercised some control or manipulation over the vehicle, such as steering, backing, or any physical handling of the controls for the purpose of putting the car in motion. Id.at 102-03. It is not necessary that these actions have any effect on the engine nor is it essential that the car move in order for the State to prove the element of operation. State v. Johnson, 580 So.2d 998, 1001 (La.App. 3 Cir.1991).
In cases similar to the instant one, courts have found the evidence was sufficient to establish the defendant was operating his vehicle while intoxicated. In State v. White, 09-1071 (La.App. 5 Cir. 6/29/10), 44 So.3d 750, reversed on other grounds, 10-1799 (La.7/1/11), 68 So.3d 508, a state trooper found the defendant slumped over the wheel of his truck parked on the lower portion of the West-bank Expressway in Gretna some distance away from a traffic light that had turned green. The truck straddled the middle and right lanes of the expressway, and there was no other traffic around the vehicle at the time. The truck was running and in gear, but the defendant’s foot pressed on the brake pedal, which kept the vehicle from moving forward. The trooper reached through the opened window, put the vehicle into park, and turned off the ignition. He ■ then shook the defendant awake, had him step from the car, and asked him some questions. The trooper noticed the defendant had bloodshot, glazed eyes and smelled of'alcohol. The officer administered a standard field sobriety test, determined that the defendant was intoxicated,- placed him under arrest, and put him in the back seat of his patrol unit. The defendant submitted to an In-toxilyzer test, which indicated that his blood alcohol level was above the legal limit. The defendant also gave a statement in which he admitted that he had consumed alcohol and that he had been driving home from his father’s house. This Court found the total circumstances showed sufficient physical handling of the controls of the car by the defendant and that a rational trier of fact could have found beyond a reasonable doubt that the defendant was operating the vehicle. Id. at 756.
In, State v. Wall, 14-539, pp. 2-3 (La. App. 5 Cir. 12/23/14), — So.3d ——, - — , 2014 WL 7338511, a detective testified that he received a call regarding a female asleep at the wheel of a vehicle parked at a’ Shell gas station. After locating the vehiclé, the detective observed the defendant “slumped over the wheel” of the vehicle. ' He |9explained that the vehicle was “running” and was “pressed up against a raised sidewalk” at the gas station, as if the vehicle was unable to move any further. The defendant appeared to be asleép,' and the vehicle was in the drive gear. This Court found that the State presented sufficient evidence to show that the defendant operated a vehicle while under the influence of controlled dangerous *572 substances in violation of La. R.S. 14:98(A). See also State v. Blancaneaux, 535 So.2d 1338 (La.App. 5 Cir.1988) (court found it unlikely that someone else was driving the car or that the defendant became intoxicated after driving onto the median); State v. Sims, 426 So.2d 148, 151 (La.1983); State v. Phillips, 389 So.2d 1260, 1261 (La.1980).
Similar to White and Wall, in the instant case, the truck’s motor was running. The defendants in White and Wall were found slumped behind the steering wheel, similar to defendant in the instant case who appeared to be asleep in the driver’s seat behind the steering wheel. Similar to White, where the vehicle was found on a roadway, the vehicle in the instant case was found stopped in a lane of a public roadway, and the evidence indicated that defendant’s foot was pressed on the brake pedal which kept the vehicle from moving forward. Also, as in White, Ms. Wells in the instant case reached in and pushed the gear into park. The total circumstances showed sufficient physical handling of the controls of the car by defendant to convict him of operating the vehicle. Although defendant indicates that there was a possibility that someone else was with him in the truck or fled the scene before the officers arrived, no such evidence was presented at trial.
In light of the foregoing, we find the evidence was sufficient under the Jackson standard to support defendant’s conviction of DWI first offense. Although defendant raised a sufficiency of the evidence argument on count one (DWI first offense) and count two (careless operation), he only briefed his |inargument on count one. Because any assignment of error that is not briefed is considered abandoned on appeal, we deem the assignment as to count two abandoned.[3] See State v. Allen, 06-778 (La.App. 5 Cir. 4/24/07), 955 So.2d 742, 757-58, writ denied, 07-1842 (La.6/20/08), 983 So.2d 1264.
Defendant next contends an issue exists with respect to the Intoxilyzer 5000 test performed by Sergeant Navo. He contends the State failed to prove the machine was properly calibrated. Defendant also indicates the officer used improper procedures when he failed to wait at least fifteen minutes between performing each test.
Because the chemical analysis which shows the amount of alcohol in a person’s blood can give rise to a presumption that the person was under the influence of alcoholic beverages and because of the severe consequences to any defendant resulting from this presumption, the State must show it has strictly complied with the procedures necessary to certify accuracy of the chemical analysis. State v. Bruce, 518 So.2d 1097, 1098 (La.App. 5 Cir.1987). Consequently, the Department of Public Safety has issued strict regulations to insure the integrity and reliability of the chemical analysis including provisions for repair, maintenance, inspection, cleaning, certification, and chemical accuracy. Id. A certificate issued by the Department establishes a prima facie case that these regulations have been complied with. Id.
Sergeant Navo testified that he conducted the chemical intoxication tests with defendant. He identified the Instrument Re-certification Form and testified that the State certified the Intoxilyzer 5000 on October 17, 2012, and recertified it on February 6, 2013. Defendant was arrested for this offense on January 19, 2013. Sergeant Navo testified the machine was working correctly that day because the |nmachine does a check on its own and *573 shows air .blank samples prior to and after the running of the machine. Sergeant Navo explained he never in his experience had an issue with a margin of error as to the blood alcohol content reading by the Intoxilyzer 5000 he used to test defendant. We find a rational trier of fact could have found the evidence was sufficient with respect to establishing the validity of the Intoxilyzer 5000 test results.
To the extent defendant is challenging the admissibility of the Intoxilyzer certificates, checklists, or results, he has waived any right to do so on appeal because he failed to object at trial to their introduction into evidence. To preserve the right to appellate review of an alleged trial court error, a party must state a contemporaneous objection with the occurrence of the alleged error as well as the grounds for the objection. See La.C.Cr.P. art. 841; State v. Torregano, 03-1335 (La. App. 5 Cir. 5/11/04), 875 So.2d 842, 846.
Defendant also indicates that Sergeant Navo used improper procedure when he failed to wait at least fifteen .minutes between each test. An officer must conduct a general observation of the defendant for a period of fifteen minutes prior to testing, whereby the defendant shall not have ingested alcohol, alcoholic beverages, regurgitated, vomited, or taken anything by mouth. State v. Presson, 43,-215 (La.App. 2 Cir. 6/4/08), 986 So.2d 843, 848.
In the instant case, Sergeant Navo testified that he reviewed the rights form with defendant at 7:31 a.m. and that defendant gave an invalid sample at 8:02 a.m. Sergeant Navo noted the machine requested that he wait fifteen minutes before asking the subject to provide another sample. Sergeant Navo testified that the second time defendant blew into the machine and provided a valid sample was at 8:22 a.m., which is 20 minutes after defendant provided the first invalid sample. Sergeant Navo further stated that from 7:31 a.m. until.8:22 a.m., he maintained a Inconstant observation of defendant. Sergeant Navo waited for 15 minutes between the two tests he conducted with.defendant blowing into the machine/ He was not required to wait an additional 15 minutes after conducting the operational tests to ensure the machine returned to a zero reading. In any event, even if the results of the Intoxi-lyzer test were not properly admitted into evidence, the evidence was still sufficient to support defendant’s DWI first offense conviction as previously discussed.
Defendant next argues that the public defenders’ office and the Bloom Law Firm failed in their legal obligation to represent him by failing to ask certain questions at trial. Defendant argues his attorney failed to establish at trial that no-officer actually saw him drive the vehicle. He also.argues his attorney failed to .pursue questioning • of Ms. Wells regarding her testimony that she put defendant’s vehicle in park.. Defendant contends his “high torch diesel truck” would have required the brake to be applied to engage the shifter past reverse into park “without a ratcheting sound or damages to the vehicle.” Defendant attaches an internet response for an alleged certified Ford mechanic to support this position. This exhibit was not introduced into the record before the trial court.
The Sixth Amendment to the United States Constitution and Article 1, § 13 of the Louisiana Constitution safeguard a defendant’s right to effective assistance of trial counsel. State v. Thomas, 12-1410 (La.9/4/13), 124 So.3d 1049, 1053. According to the United -States Supreme Court’s opinion in Strickland v. Washington, 466 U.S. 668, 1.04 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant asserting an ineffective assistance claim must show: 1) that defense counsel’s performance was deficient; and 2) that the deficiency prejudiced the *574 defendant. The defendant has the burden of showing that “there is a -reasonable probability 11sthat, but for counsel’s unprofessional errors, the results of the proceeding would have been different.” Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.
- Generally, an ineffective assistance of counsel claim is most appropriately addressed through an application for post-conviction relief filed in the district court, where a full evidentiary hearing can be conducted, rather than by direct appeal. State v. Jones, 13-99 (La.App, 5 Cir. 8/27/13), 123 So.3d 758, 765. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised in an assignment of error on appeal, it may be addressed in the interest of judicial economy. .Id.
We find the writ application contains sufficient evidence to address defendant’s ineffective assistance of counsel claims as defendant provides the trial transcript. In order to prevail on an ineffective assistance of counsel claim, the accused must overcome a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689, 104 S.Ct. at 2065.- An alleged error that is within the ambit of trial strategy does not establish ineffective assistance of counsel because “opinions may differ on the advisability of such a tactic.” State v. Wise, 13-247 (La. App. 5 Cir. 11/19/13), 128 So.3d 1220, 1230, writ denied, 14-253 (La.9/12/14), 147 So.3d 703.
In the instant case, defense counsel’s alleged failure to properly question witnesses falls within the ambit of trial strategy. Defendant does not demonstrate that, but for counsel’s alleged unprofessional conduct regarding questioning at trial, the outcome would have been different. ■ Additionally, it is noted that exhibits not properly and officially offered and admitted into evidence cannot be considered. State v. Whitley, 14-737 (La.App. 6 Cir. 3/25/15), 169 So.3d 658, 660, n. 1.
| ^Defendant also contends an issue exists as to whether each officer testified under oath at trial. He acknowledges the transcript reflects the officers were sworn, but argues there is no video arid no one witnessed the swearing of the officers in the courtroom. The copy of the trial transcript attached to-relator’s writ application indicates all three officers were sworn and testified under oath. There is no evidence of inaccuracies in the transcript.
We find the evidence supports the trial court’s decision to find defendant guilty of violations of La. R.S. 14:98(A), First Offense Driving While Intoxicated and La. R.S. 32:58, Failure to Maintain' Control/Careless Operation of a Motor Vehicle. We further find no other error which would warrant a reversal of these convictions. Accordingly, we deny defendant’s request in his writ application for dismissal of the convictions and charges against him.

WRIT GRANTED; RELIEF DENIED

. Ms. Wells was no longer employed with the Sheriffs Office at the time of trial.

. Trooper Brown was employed by the Louisiana State Police for seven years and during that time, he trained in the field of DWI detection.

. Nevertheless, a rational trier of fact could have found that the evidence was sufficient under the Jackson standard to support defendant’s conviction on count two.